Battle J.
 

 The execution of the deed, dated the 20th day of February, 1844, which the plaintiff by her bill seets to establish is admitted b.y the defendant in his answer, and, if it were necessary that it should be so, is fully proved by John Davidson who surveyed the land, drew the deed under the instructions of the defendant, and attested it. The plaintiff would then be entitled to the relief which she ashs upon that admission in the answer, but for what is stated further by the defendant to rebut it. He alleges that though the consideration for the conveyance of the land mentioned in the deed is natural love and affection, yet the true consideration, was an agreement by his son John Thomas, Jr., the grantee to support him and his wife, the mother of the said John ; to secure the due performance, of which, his said son was to have a bond prepared and executed. He alleges further, that the said bond never was prepared and executed by his son; but that the latter, becoming dissatisfied with the agreement, they agreed to rescind the bargain and have the deed cancelled, it not having been registered, and that accordingly it was surrendered to him by his son John, and he can-celled it by tearing his name off in the presence of John and his, the defendant’s daughters, and he then verbally released his son John from his agreement to support defendant and his wife. Are these allegations of the defendant supported by the testimony? So far from it that we think they are substantially disproved. The only testimony offered in support of them, are the depositions of members of his own family and two or three other witnesses of doubtful character, who speak only of the declaratiens of the grantee, that he
 
 *304
 
 bad not given a bond for tbe support of bis father and mother, and had surrendered up the deed for the land. Rut in one particular of some importance to wit: the statement that the deed was delivered up by the grantee and cancelled by the grantor in the presence of his daughters, he is not supported by their testimony. They do not pretend that they know anything of the recision of the contract and cancellation of the deed except what they heard their brother say about the matter. Giving to the testimony of the defendant’s witnesses, however, all the weight to which it is fairly entitled, its effect is very much weakened by the depositions offered by the plaintiff of the three Messrs. Troutman and. Mr. Waugh, though one of these witnesses is the maternal, grand-father of the plaintiff, another is her uncle, arid a third is a distant kinsman. They testify that they heard the defendant at different times, both before and after the death of his son, say that he had given John a deed for the land in question, never mentioning or intimating that the contract had been rescinded and the deed cancelled.
 

 Thus stands the case upon the mere declarations of the parties, declarations which may have been (as such declarations often are,) thoughtlessly uttered, imperfectly understood, and still more imperfectly remembered. It is a great satisfaction to us, thal we are not bound to come to a conclusion either way upon them. There is some other testimony in the cause which we think puts the question of the consideration upon which the deed was made, beyond doubt, and satisfies us that the deed itself never was surrendered up and cancel-led during the life of John Thomas, Jr., the grantee. John Davidson, who is admitted by both parties to be an intelligent man, testifies that he was called upon by the defendant to run off a piece of land which he wished to give his son John, saying that John had lived with him and worked for him until he was twenty-five or six years old, and he now wished to give him that piece of land and make him a deed for it, and
 
 *305
 
 tliat be intended to write to Alabama for bis son Anderson to come in and live with bim, and that if Anderson would do so, be would give bim a deed for the balance of bis land, upon condition that be would support the defendant and bis wife during their lives. Witness surveyed the land and laid off the part intended for John, when be asked the defendant what consideration be wished to be inserted in the deed, to which be replied, that John had worked with bim until he was twenty-five or six years old, and be wanted to 'give bim that land (pointing towards it,) and upon witness suggesting love and affection for the consideration, be said that would do. The deed was accordingly so prepared and when signed and attested, the old man banded it to John, calling upon the witnesses at the same time, in an earnest manner to notice that be bad delivered it to bis son, for the land, repeating again the reason why be wished to give it to bim. John then said that be bad no safe place in which to keep the deed, and handed it back to bis father to keep for him, and the father took it and put it in bis pocket, which was the last the witness bad seen of it. Witness states expressly that be never beard a word said about any other consideration for the deed than that above mentioned.
 

 Another witness, Ilenry Troutman, the maternal grandfather of the plaintiff, testifies to declarations of the defendant, assigning the same reason for bis gift of the land to bis son, with the addition that John bad to pay for it. Mr. Young, the magistrate who took the list of taxables in the district in which the defendant lived, for the year 1844, states that John Thomas, Jr., gave in the land in question for that year, while bis father gave in that much less than be bad done for some years before, and than be did again after the death of bis son John.
 

 We are satisfied, then, from the testimony of John Davidson, that the account given by the defendant as to the consideration upon which the deed in question was made, is not
 
 *306
 
 true. We are hence less inclined to rely npon his allegation as to the rescission of the contract between him and his son, relative to the deed and the cancellation of that instrument, and as the burden of proving them is upon him, we think that he has altogether failed to do so. The result is that the plaintiff is entitled to a decree for a conveyance of the land described in the deed, which was executed by the defendant to her father on the 20th day of February, 1844, and afterwards destroyed by the defendant, and also to an account for the rents and profits of the said land received by the defendant since the death of her father.
 

 The contract for the purchase of the five acres of land including a spring alleged in the plaintiff’s bill, was never reduced to writing, and is not admitted in the answer. It cannot therefore be specifically enforced, even though partly executed, but the plaintiff is entitled to an account for the substantial, improvements put upon the land by her father.-— See Albea v. Griffin, 2 Dev. & Bat., Eq., Rep., 9,