MIBRA GULLEY and others v. E. O. MACY, Adm'r. and others.

*Deed—Title—Contract in regard to land—Parol Proof.*

1. A grantee under a deed absolute on its face, but intended as a security for a debt (or one purchasing from him with notice of such defect) acquirés no title as against creditors or subsequent purchasers, even though there be no intent to defraud creditors.

2. If complaint states a parol contract in regard to land and the answer sets up another and a .different contract, it is not competent to the plaintiff to offer oral proof in support of his claim, if objected to by defendant; and this, though the statute of frauds be not pleaded. (When such contract will be enforced, stated by RUFFIN, J.)

(*Gregory* v. *Perkins*, 4 Dev., 50 ; *Halcombe* v. *Ray*, 1 Ired., 340 ; *Lyon* v. *Crissman*, 2 Dev. & Bat. Eq., 268 ; *Allen* v. *Chambers*, 4 Ired. Eq., 125 ; *Barnes* v. *Brown*, 71 N. C., 507 ; *Bonham* v. *Craig*, 80 N. C., 224 ; *Morrison* v. *Baker*, 81 N. C., 76 ; *Weinstein* v. *Patrick*, 75 N. C., 344, ,cited and approved.)

CIVIL ACTION tried at Spring Term, 1880, of WAKE Superior Court, before *Gudger, J.*

The defendants appealed from the judgment of the court below.  See same case, 81 N. C., 356.

*Messrs. T. M. Argo* and *A. M. Lewis,* for plaintiffs.
*Messrs. D. G. Fowle* and *Battle & Mordecai,* for defendants.

RUFFIN, J.   For present purposes we may treat the following as the undisputed facts of the case: In February, 1863, Thomas C. Nichols executed a deed, absolute on its face, conveying the land which is the subject of controversy to the defendant, George W. Thompson, and soon thereafter entered the army, where he remained until his death in January, 1864.  He left surviving him as his widow the plaintiff, Mibra, (since intermarried with George W. Gulley) and the other plaintiffs, his children.   On the 20th of May, 1863, Daniel White, the father of Mibra, gave her the sum

of one thousand dollars, and at the same time executed an instrument in writing wherein he declared that he gave her that sum to be accounted for as an advancement in the distribution of his estate, and directed her to use it in " the redemption of her land now under a mortgage deed in the hands of one Mr. Thompson, said land to be for her use and benefit during her life, and then to her children equally." This money she paid to Thompson in June, 1863, who made her no deed but simply surrendered that which he had received from her husband, which had not then been registered, but has been since the beginning of this suit. After the death of Nichols, the defendant, Macy, became his administrator and in 1872 instituted certain proceedings in the probate court for a sale of the same land for assets to pay the debts of his intestate, and obtaining an order sold the same on the 1st June, 1872, when the defendant, Allen, became the purchaser at the price of $627, upon the payment of which amount he took a deed from the administrator, the said proceedings however being inoperative because of the great irregularities therein. The defendant, Allen, soon after so purchasing, took possession of the land and has continued it ever since, except as to a small piece which he sold to the defendant, High, and placed him in the possession thereof.

The facts in dispute between the parties are as follows: The plaintiffs allege that Thompson had *purchased* the land of Thomas C. Nichols, and that the deed of February, 1863, in being an absolute one, expressed the true intent of the parties; that plaintiff, Mibra, also *purchased* it, when in June, 1863, she paid Thompson the very money which had been advanced her by her father, and upon the express trusts declared by him, and that both of the defendants, Allen and High, had notice of all these facts at the time of their respective purchases. On the other hand the defendant, Thompson, alleges that said deed was intended only as

a security for an amount which Nichols owed him, at the time of its execution, and for certain other amounts then advanced to him or assumed for him, and that there was an express understanding between them that it should not be registered, but should be surrendered upon payment of the amounts intended to be secured, and that it was further agreed that Nichols and his family were to remain in possession of the land; and he expressly denies that there was any contract in regard to the land, between the plaintiff, Mibra, and himself, but says she paid him the money as agent for her husband, who was then in the army, and with the purpose simply to *redeem* his land in accordance with the understanding between them, and therefore he surrendered her the deed, and made her none; that he knew that the money paid him had been furnished by her father, but had not the slightest intimation of the trusts imposed.

The defendants, Allen and High, deny all notice of any irregularity in the proceedings for the sale, and of the claim of the plaintiffs, or any of them, to the land, and the former alleges that the money he paid for the land was used by the administrator of Nichols in the payment of his intestate's debts, and that believing the land to be his, he has put improvements upon it.

The prayer of the plaintiffs is to have the defendant, Thompson, declared a trustee of the legal title for them; and that he be decreed to execute a deed conveying the land to the plaintiff, Mibra, for life with remainder in fee to the other plaintiffs, and that the proceedings in the probate court for a sale by the administrator be declared irregular and void, and the deed to Allen be cancelled, and that they recover the possession of the land.

The defendants, Allen and High, deny the right of plaintiffs to recover the land, and the former asks, in case the sale to him be set aside, that he be allowed for his improvements,

and also subrogated to the right of creditors, to whom his money was paid, against the land as the property of Nichols.

On the trial in the court below, the plaintiff, Mibra, was introduced as a witness for the plaintiffs and testified that she first saw the deed from Nichols to Thompson in June, 1863, when she went to see the latter for the purpose of buying the land back; that she told him that she had gotten some money from her father and wanted to buy the land back, when he said he would call and see her; that he did not take the money that day, but the next week she went again and paid him the money and he delivered to her the deed from Nichols to him, and that there was nothing said about that deed being a sufficient title, nor did she ask him. This was the whole of the evidence offered by the plaintiffs as to the alleged purchase of the land of Thompson by the plaintiff, Mibra.

The defendants introduced the defendant, Thompson, and offered to show by him the real consideration of the Nichols deed, and that it was only intended as a security, and to be surrendered upon the payments of the amounts secured, and the understanding between them that it should not be registered, but upon the objection of the plaintiffs the court excluded the evidence and the defendants excepted. This witness then stated that the plaintiff, Mibra, came to his house and told him that she had brought the money to "redeem the land" or else that she had "come to pay back the money" lent her husband, and he could not say which of the two expressions she used; that she paid the amount and not a word was said about her buying the land or his making her a deed, and that he had no such understanding; that at the time he surrendered the deed to her, he told her that it had never been registered because he expected the land would be redeemed; that he had told her, too, that it had been the understanding between Nichols and himself that when his money was paid he was to surrender the land,

and that he accompanied the act of delivery with the words, " I now surrender the deed in compliance with that promise." That he had previously told her of the understanding that he was to surrender the land when his debts were paid; that he had signed no writing of any sort binding himself to convey the land to the plaintiff, Mibra, or any other person, that his debt had been paid and he had no further interest in it, and if there was any title in him he was willing to convey to any person to whom the court might direct.

The defendant asked the court to charge the jury—

1. " That if they believed from the evidence that the deed from Nichols to Thompson was not registered while in Thompson's hands because of an agreement between them that it should not be so done, then the same was. but a security and vested no title in Thompson against creditors."

2. " That under the registration laws the deed was void because absolute on its face while it was intended as a security only."

3. " That there was no *legal evidence* that Mibra Gulley bought the land from Thompson for herself and her children in remainder."

The court declined to give any of the instructions asked for, but told the jury that if Mibra Gulley purchased the land with money furnished by her father, as a separate estate for herself with remainder in fee to her children, and had received from Thompson a surrender of the Nichols deed without the same having been registered and had retained the same in her possession and with her children lived upon the land, then, she had made a valid purchase of the land, though Thompson had made her no deed. His Honor further instructed the jury, that if she, at the time of getting the money from her father and when she paid it to Thompson for the land, treated the deed from Nichols to Thompson as a mortgage and paid her money on

the understanding that the same was a mortgage,. she is estopped from denying the contrary.

As we interpret the instructions asked for by the defendants and His Honor below seems to have understood them, we think they should all have been given to the jury, but as there is some obscurity in the first one, we should not feel willing to disturb the judgment of the superior court, if that stood alone, as we deem it to be the duty of parties so to present their points as to be clearly apprehended by the court below, and to show certainly to this court that there was an error committed, of which they have a right to complain. Taken literally, that one instruction if given, would have made the validity of the deed from. Nichols to Thompson depend upon the agreement of the parties merely as to its non-registration, and without regard to the character of the deed itself, and might possibly have been properly refused. But we are convinced from the tenor of the examination of the witnesses and the charge of the court itself, that the point really intended to be made by the first two requests for instructions, was, that the deed being absolute on its face was void as to the creditors of Nichols, if the jury should be satisfied that it was only intended as a security for his debt to Thompson ; and this, because of the agreement of the parties that it should not be registered, and of the fact that it could not be registered, and we are confirmed in this opinion by seeing that the counsel for the plaintiffs seem to have understood it and have argued it in that light in their well-considered brief filed in this case.

Assuming that to be the true intent of the defendants first two requests for instructions, we think His Honor should have charged the jury accordingly. That a deed absolute on its face but only intended as a security is fraudulent as to the creditors of the maker, has been thought to be the settled law of this state since the case of *Gregory* v. *Perkins*, 4 Dev., 50, and the case soon following it of *Halcombe* v. .*Ray*,

1 Ired., 340.   Such a rule, the court declares in those two cases, is necessarily deducible from the statutes requiring mortgages and deeds in trust to be registered, and as those statutes were passed because of the experience of the evils resulting from secret trusts and encumbrances, the courts felt constrained to extend their operations to the extreme limit of the mischiefs intended to be remedied, so as to embrace every instrument which (whatever its form) was intended by the parties to be a security only, and this without regard to any intent on their part to defraud creditors. Such a grantee can acquire no title as against creditors or subsequent purchasers, not because of any evil intent to perpetrate a fraud, but because he cannot bring himself within the provisions of a statute which allows mortgages and deeds in trust to take effect from their registration only.   As an absolute deed, it cannot be registered because such is not the intent of the parties; nor as a mortgage, because it does not purport to be one and would fail to give that notice to others dealing with its maker, which it was the object of the statutes to secure.

His Honor should therefore have charged the jury, that if the deed in question absolute on its face, was in reality but a security and was so intended and treated by the parties, it was void as to the creditors of Nichols, and that if the plaintiff, Mibra, had notice of such defect in it she was affected thereby, even admitting that she had purchased the land as she claims to have done.  Coming in under Thompson with notice, she would stand in his shoes and be subject to every attack from creditors and purchasers to which he was liable.

We come now to the defendants' third prayer, proceeding upon the idea that the only evidence offered by the plaintiff, Mibra, of her alleged purchase of the land from Thompson was by parol, and that it was not, under our statute of frauds, "*legal evidence*" for that purpose.  As stated by POMEROY in

his treatise on the Specific Performance of Contracts, § 70, while many of the American states have by their statutes of frauds changed the phraseology of the English statute of 29, Charles II, and especially in declaring the several contracts specified *to be void* unless written, while that merely prohibits the bringing of actions upon them, still it has not had the effect, *except in a few states*, of bringing about any very marked change in the decisions of the courts, most of them having adopted, in construing the provisions of their several statutes, the interpretation given by the courts of England to the corresponding provisions in that statute, notwithstanding the discrepancy in the language employed. This state must be classed with the few excepted states, and is so classed by the author just quoted. § 97. Our courts seem to have thought that in thus changing the language of the statute, the legislature must have intended *something*, and not being willing to defeat that intention made their decisions to correspond therewith, thus avoiding many subtle distinctions made by the courts of England, and the courts of the several states that have gone with them in their construction of the statute, and in which they seem many times to be endeavoring to defeat than to enforce it.

The difference in the two constructions manifests itself at the very first step taken. The courts of England hold that the statute does not affect the substance of such contracts as are within its provisions, but simply prescribe a rule of evidence for their enforcement, and hence that it is necessary in order to get the advantage of the statute that it should be regularly pleaded. Whereas the courts of this state have held that it goes to and affects the contract itself, so that whenever and wherever a party is put to prove the contract which he seeks to enforce, he must show it to be of the character contemplated by the statute, and that by legal evidence.

It is true that in the early case of *Lyon* v. *Crissman*, 2 Dev. and Bat. Eq., 268, it was held by this court that the objection that a contract is void because not in writing cannot avail a party who does not set it up in his pleadings, and Judge GASTON in delivering the opinion says, that as the plaintiff has alleged one parol agreement, and the defendant another, without reference to the statute, it has then become a matter to be determined by proof, which representation of the transaction is the true one, and accordingly the plaintiff was deemed to have a specific performance of an unwritten contract for the purchase of land. Still there was no question made in the case as to the competency of the evidence, and indeed could not have been, as the object of the bill was to enforce a trust growing out of the alleged purchase of the land by the defendant, partly with the money of the plaintiff and upon an agreement to convey to him upon his paying the balance, thus making a case that was never thought to be within the statute of frauds, but might always be established by oral proof. But be that as it may, this court has since that day, so often and so unequivocally declared that although the defendant does not plead the statute, yet if he deny the contract as stated by the plaintiff, the court will not hear parol evidence in support of the plaintiff's claim. Such was the ruling in the case of *Allen* v. *Chambers*, 4 Ired. Eq., 125, which is one of the cases referred to by POMEROY in his treatise before quoted, to illustrate the effect which the changes in the wording of the statute has produced upon the decisions of this court. In that case the plaintiff alleged that the defendant had made a parol contract to sell him a parcel of land containing a certain number of acres and at an agreed price per acre, had accepted a part of the purchase money and admitted the defendant in the possession of the premises, averred a tender of the whole of the purchase money, which the defendant had refused to accept, and prayed that he

might be decreed to do so, and to make the plaintiff title. The answer admitted that the parties had entered into a parol contract for the land, and that under it the defendant had received some portion of the purchase money, but expressly denied that the contract was such as was stated in the bill, and proceeded to show wherein it essentially differed, and averred that he had offered and was still willing to carry out his contract as he understood it to be. After proofs taken by both parties the case was brought to this court, and in disposing of it the court say: "The defendant, if he had chosen that mode of defence, might have brought the case to an end at once by a plea of the statute, but he has thought it due to himself to state his willingness and endeavor to deal fairly, and this he does by denying the contract as set out in the bill in two essential particulars. The parties are therefore directly at issue as to the substance of their contract, and as it is admitted to be by parol, there is no mode of ascertaining which is right, but by hearing the oral testimony of witnesses. That the legislature must have meant in such case to exclude." And again they say: "If the defendant deny the agreement charged in the bill altogether, or deny it as charged, and set up a distinct and inconsistent agreement, it is impossible to move one step further without doing so in the teeth of the act, which as a rule of evidence upon a point of fact in dispute between the parties, must be as binding in this court as in a court of law."

The same doctrine was held in *Barnes* v. *Brown*, 71 N. C,. 507, which in many of its particulars was not unlike the present case. There, the ancestor of the plaintiffs had given the first mortgage to one King, the ancestor of the defendants, and a second mortgage to other parties, under which last the land was sold and purchased by King who, the plaintiffs alleged, had agreed to reconvey to their ancestor whenever repaid the amount the land had cost him, and

had received the entire amount thereof. The defendants without pleading the statute denied the allegations of the plaintiffs' complaint and their right to the property. In speaking for the court, Judge RODMAN states the question to be, whether such a contract being in parol can be enforced consistently with the statute, and concludes that it cannot be; and this too, after the defendants had not only failed to plead the statute, but had allowed the plaintiffs to offer evidence in support of their allegations without objection so far as is disclosed in the case. And in this last particular it resembled the case of *Allen* v. *Chambers, supra,* for there, evidence had been taken on both sides and the cause set for hearing and removed by consent of parties to this court, and before any objection was interposed as to the nature of the contract. So that it is clear that both of the cases cited turned upon the *legal insufficiency* of the evidence offered in support of the contract. The very same point was discussed by the present Chief Justice in *Bonham* v. *Craig,* 80 N. C., 224, and determined in conformity with the decisions referred to above. And so also is *Morrison* v. *Baker,* 81 N. C., 76, where the rule is thus stated: "A contract which the law requires to be in writing can be proved only by the writing itself, not as the *best,* but as the *only admissible evidence of its existence.*"

The farthest our courts have gone, and the farthest they seem inclined to go, is, to hold that the contract will be enforced when the defendant in his answer submits to perform a parol contract as charged in the bill, or when he admits it and neither by plea nor answer insists on the statute.

Since the defendant, Thompson, by his answer in direct terms denies that there was any contract of purchase betwee. the plaintiff, Mibra, and himself, it brought the case within the principle established in the cases cited, so that the defendants (Thompson being among them and joining in the

prayer) were entitled to the charge as asked, and it was error in the court to refuse it.

As there is to be a new trial, we have not thought it necessary to consider the question as to the competency of the defendant, Thompson, to testify as to the transaction between Nichols and himself, and their understanding in regard to the registration of the deed and the right of the former to redeem the land, further than to say, that it seems difficult to distinguish this case from *Weinstein* v. *Patrick*, 75 N. C., 344, in which it was held that a party very similarly situated was incompetent under section 343 of the Code.

As the alleged contract of purchase by the plaintiff, Mibra, is admitted to be by parol and therefore incapable of being specifically enforced, and as all other matters in dispute between the parties seem to be concluded by the verdict of the jury upon the issues submitted, and the defendant, Thompson, admits his debts to have been satisfied, it occurred to us at one time that it would be proper for this court now to declare the rights of the parties in the premises. But as it may be possible for the plaintiffs on another trial to offer other and competent testimony of the contract of purchase with Thompson, or to induce the parties to abandon their objection growing out of the statute to that now in their reach, we have thought it just that they should be allowed the opportunity to do so. If however finding themselves unable to remove from their path the obstacles interposed by the statute, they should decline another trial, this court is of the opinion that the plaintiff, Mibra, is entitled to be subrogated to the rights of the defendant, Thompson, whose debts she paid, and to have the value of her money with interest, subject however to the prior claims of the creditors of Nichols, as to whom his deed was void under the registration law of the state; that the defendant, Allen, is entitled to be reimbursed the amount he paid for the land with interest, as that went to satisfy the creditors;

that he is also entitled to be reimbursed the present value of his permanent improvements, provided the sum does not exceed the amount due from him for rents and profits during the time he had possession of the premises; and that he is liable to pay rents and profits upon the land as unimproved during the whole time of his possession, as the plaintiff heirs at law of Nichols are all infants; and that all necessary accounts be taken and the land be sold and the proceeds be disposed of as above suggested.

In determining the rights of parties as above, we have not considered how they may be affected by the recent act of 1879, ch. 257, providing a cure for certain irregularities in judicial proceedings in which infants and other persons under disabilities are parties, as that matter was not made a point in the case, and the parties are not intended to be concluded in regard to it.

Error.           *Venire de novo.*