M. B. PITT, Ex'r of James Lawrence v. E. L. MOORE.

*Specific Performance of Contract—Statute Frauds—Betterments—License—Parties.*

1. The specific performance of a parol contract to convey land will not be enforced, unless the person charged with the execution thereof submits to a decree, or unless he admits the contract and does not insist upon the statute of frauds.

2. Although a parol contract for the sale of land will not be enforced, the law will not permit him who repudiates it, to enjoy the benefits of the labor and money expended in the betterment of the property by one relying on the contract, without compensation.

3. One who enters under a license and makes improvements which permanently enhance the value of the property is protected by the same principle.

4. The mortgagees of lands should be made parties to actions in which it may become necessary to sell them and distribute the proceeds of sale.

CIVIL ACTION, tried before *Avery, J.*, at Fall Term, 1887, of the Superior Court of EDGECOMBE.

It is alleged and admitted that James Lawrence, late of Edgecombe, died in said county in 1884, leaving a last will and testament, which was duly proved, and the plaintiff, executor therein named, duly qualified as such, and that by the terms of said will he is authorized to sell the interest of his testator in the property mentioned in the pleadings. It also appears that at the time of the death of the testator, and for some time prior thereto, he and the defendant were partners and tenants in common of certain mill property, situated near the village of Sparta, in Edgecombe County, each owning one-half interest.

It is further alleged, among other things, that the testator and defendant carried on a general milling business at the mill owned by them, and that for the better utilization of the property, the mill house and a double tenement house used therewith, "were moved about forty yards up stream, where a new dam had been built for more than twenty years, which said dam is upon the lands of the said Moore, on the one side of the stream, and the lands of Lawrence & Moore on the other, and was built at a place on the stream formerly covered by the mill pond, and the mill was built on the land of Moore, immediately below said dam, and above the old dam, and the opposite side of said stream belongs to Moore & Lawrence, the mill wheel now being at a place in the mill pond as it was constructed before the old dam broke and the new one built; he (Moore) agreeing and contracting in consideration of a payment made by said Lawrence to him to convey by deed, a title in fee, to one-half interest in the site or parcel of land on which said houses were located after the changes mentioned, being about one-tenth of an acre, so that it should become the common property of the partnership."

The complaint further alleges that the defendant promised from time to time to convey to the testator his half interest

in the new site, as set forth, and has repeatedly admitted the payment therefor by said testator, but he never conveyed said title in the lifetime of the testator, and that since his death the plaintiff executor has demanded of the defendant "that he convey said title to those lawfully entitled thereto, which he has refused to do, alleging that the entire property was his, and that he did not intend to account for it in any way."

The complaint also alleges that the defendant is insolvent; that up to the time of the death of the testator, he and the defendant divided the tolls weekly; that the plaintiff has demanded that the defendant continue to make such a division until the property could be divided by sale, but that the defendant refuses to so divide, but takes and appropriates the entire tolls, &c., to the irreparable damage of the estate of the plaintiff's testator, and he asks for judgment declaring that the estate of his testator is entitled to an interest of one-half in the property; that a sale be ordered and a receiver appointed, &c.

The answer, so far as it is material, states in substance, that after operating the mill by plaintiff's testator and defendant on the first site until about eight years prior to this action, "the mill house and machinery in it was, by their joint action, removed up the stream and put upon lands then in possession of the defendant, which he had thereafter conveyed by mortgage to A. T. Bruce & Co., and that said Bruce & Co. had no notice of such removal until it was accomplished, and they are still the owners of the same as mortgagees"; that neither before the removal of the mill, nor at the time of its removal, was anything said by plaintiff's testator to the defendant about purchasing the land, and the first time the subject was mentioned between them was about a year after the removal, when the testator said to the defendant: "We have never agreed about the price of the land where the mill now sets," to which defendant replied that he

"was ready to fix the price and execute the deed for it," when the plaintiff's testator said " it made no difference about a deed, so he kept it as long as he lived, he was satisfied." They continued thereafter to operate the mill by managers of their selection, and to divide the proceeds equally, till the death of the testator. He describes the location, and says that when removed every part of the mill was put upon his land, and denies that he ever promised, except as stated, "to make title to plaintiff's testator for one-half interest in the present mill site, or that he has ever admitted that he has received payment therefor," &c.

He denies that he is insolvent. It was agreed that the mortgage to Bruce & Co. was executed subsequent to the erection of the mill on the present site, and that they knew nothing of any agreement between plaintiff's testator and the defendant, and that the following, which shall be taken in lieu of a copy of the mortgage, is all therein pertaining to the mill property in controversy, to-wit: " Also my one-half interest in the five acres of land sold by said Moore to Geo. C. Sugg, and afterwards sold by his administratrix, including the large grist mill and fixtures and all the personal property used therewith, known as the ' Sparta Mills.' "

There was no evidence in writing of any agreement or contract in regard to the removal or erection of the mill upon the land of the defendant, and he objected to the 1st and 6th issues as there was no evidence, other than parol, bearing upon them ; and he insisted that whether claiming under the parol contract for the purchase of an interest in the land, or under a license, the plaintiff must fail.

The following are the issues submitted, (the 1st and 6th objected to by defendant,) with the responses thereto, and judgment of the Court:

"1. Did the defendant promise to execute a deed to Lawrence for one-half of the present mill site ?   Answer, Yes.

"2. Did Lawrence pay the defendant for the one-half interest? Answer, No.

"3. If not, what is the value of one-half of the land on which the mill sets? Answer, Ten dollars.

"4. What is the value of the permanent improvements put upon the land of the defendant by the defendant and Lawrence as co-partners? Answer, $1,500.

"5. Did Lawrence contribute his half of the expenses incurred by the erection of the same? Answer, Yes.

"6. Was the mill moved by Lawrence and defendant upon defendant's land with the understanding and agreement that the land was to be partnership property upon the payment by Lawrence of one-half the value of the land? Answer, Yes.

"Upon the verdict the plaintiff moved for the judgment of the Court declaring a lien upon the land upon which the mill sets and the permanent improvements thereon to the extent of one-half the value of said permanent improvements as found by the jury, and the appointment of a Commissioner to sell the land and improvements to enforce the lien, unless the defendant shall in the meantime pay off and discharge the same. Upon consideration, it is adjudged by the Court that the motion is disallowed, and the defendant moving for judgment *non obstante veredicto*, it is adjudged by the Court that the defendant go without day."

Thereupon the plaintiff appealed.

*Mr. J. L. Bridgers*, for the plaintiff.
*Mr. J. B. Batchelor*, for the defendant.

DAVIS, J., (after stating the case). 1. Is the plaintiff entitled to have a *specific performance* of the promise made by the defendant to execute to his testator a deed for one half of the mill site?

The plaintiff insists that though not in writing, the contract as alleged, is substantially admitted by the defendant, and the equity of the plaintiff not denied, and that the objection that it was not in writing, but by parol, could only be taken by answer, and as the statute was not set up as a defence in the answer, that question is not before the Court.

We take a different view.

The defendant does not admit any payment or performance, or part performance, by the testator, so far as it relates to any contract or agreement for the purchase of or title to the land to which the mill was moved.

There is not only the fact, as found, that the testator, Lawrence, never paid the defendant for the one half interest, but the plaintiff fails to set out the consideration or price to be paid, which is an essential and necessary part of the contract. It is true the jury finds that there was an agreement to convey, and that the land was to be partnership property, and that it was worth $10; but what was the *contract price?* None is alleged in the complaint, and none seems to have been agreed on. The law required the contract to be in writing, and there is nothing to distinguish it from *Gulley* v. *Macy*, 84 N. C., 434, and like cases in which it is held that the Courts will not enforce parol agreements for the sale of land, unless in cases when the defendant in his answer submits to perform the parol contract as charged in the complaint, "or when he admits it and neither by plea nor answer, insists on the statute."

2. Is the defendant liable to the estate of plaintiff's testator for the permanent improvements put upon the land jointly by the testator and the defendant, to the extent of the one half of the costs thereof paid by said testator?

Whatever may have been the ancient rule, it is now well settled by many decisions from *Baker* v. *Carson*, 1 D. & B. Eq., 381, in which there was a divided Court, but RUFFIN, C. J., and GASTON concurring, and *Albea* v. *Griffin*, 2 D. &

B. Eq., 9, by a unanimous Court, to *Hedgepeth* v. *Rose*, 95 N. C., 41, that where the labor or money of a person has been expended in the permanent improvement and enrichment of the property of another by a parol contract or agreement which cannot be enforced because, and only because, it is not in writing, the party repudiating the contract, as he may do, will not be allowed to take and hold the property thus improved and enriched, " without compensation for the additional value which these improvements have conferred upon the property," and it rests upon the broad principle that it is against conscience that one man shall be enriched to the injury and cost of another, induced by his own act.

In the case before us, the land on which the mill was situated was of little value—only $10—the improvements put upon it more valuable—worth by the finding of the jury $1,500—and put up by the plaintiff's testator and the defendant, at their joint expense, with the understanding and agreement that they should own the property as partners, and they continued to deal with it as partnership property down to the death of the testator. While this agreement cannot be enforced as a valid contract for the sale of land, equity will not permit the defendant to enjoy the benefits of it without compensation. It was not by his *mere license* that the improvements were put upon his land—it was coupled with an expenditure of money by which the land was improved, and therefore coupled with an *interest*, which gave to the testator *rights*, of which the defendant cannot deprive him by a repudiation of his parol agreement. *Will. & Tar. R. R. Co.* v. *Battle*, 66 N. C., 541.

In *Bridges* v. *Purcell*, 1 D. & B., 492, it is left an open question, " whether a license to do an act which in its consequences permanently affects the property of him who gives it, when so acted on, that what is done cannot be conveniently undone, may be regarded as a grantee of an interest to the extent of the consequences thereby authorized and

therefore not revocable; or whether the license does not necessarily imply a permission for the thing done to remain, notwithstanding the continuing consequences; and therefore the licenser, on a principle of good faith, may be forbidden to withdraw it, without indemnifying him who trusted thereto." The settlement of these questions was not necessary, as Judge GASTON said, to the determination of that case, but we think that they have been settled by adjudications since, in favor of the equity of those who, acting in good faith, have expended money or labor in improving the property of others in whom they trusted. Such, we think, is the equity of the plaintiff in this case.

He is entitled to compensation to the extent of one half of the value added to the land in question, by the permanent improvements made thereon.

3. It is conceded that by the terms of the testator's will, the plaintiff has authority to make sale of his interest in the mill, but the defendant objects that the plaintiff sets up a partnership between his testator and the defendant, and that this action cannot be maintained, because the property, being partnership property, vests in the surviving partner under § 1326 of *The Code.*

The action is substantially for the settlement of the partnership, and the plaintiff is entitled to have an account and to receive one half of the net profits accrued since the last settlement between the defendant and his testator, and one half of the enhanced value to the land by reason of the improvements, and this relief is within the scope of the plaintiff's prayer and warranted by his complaint.

4. It appears that after the erection of the mill, A. T. Bruce & Co. became the mortgagees of the defendant's " one half interest" in the property in question, and as they thereby became the legal owners of defendant's interest, and their rights may be affected by the settlement, they ought to be made parties to this action.

There is error, and this will be certified to the end that further proceedings may be had in accordance with this opinion.

Error.