## LUTON v. BADHAM.

(October 30, 1900.)

1. *Vendor and Purchaser—Parol Contract to Convey Land—Statute of Frauds—Improvements.*

   A vendor in possession, who repudiates a parol contract to convey land, is liable to vendee for the value of improvements.

2. *Evidence—Parol—Parol Contract—Statute of Frauds—Vendor and Purchaser—Improvements.*

   · That a party entered and placed improvements on land under a parol contract to convey, may be proved by parol evidence when the owner of the land denies the contract.

   DOUGLAS, J., dissenting.

CIVIL ACTION by Margaret Luton, administratrix, against Hannibal Badham, heard by Judge *A. L. Coble,* at Spring Term, 1900, of CHOWAN Superior Court. From a judgment of nonsuit, the plaintiff appealed.

*Busbee & Busbee,* for plaintiff.

*Pruden & Pruden,* and *Shepherd & Shepherd,* for defendant.

FURCHES, J.    The plaintiff is the administratrix of Alexander Badham, her former husband, and the defendant is the father of her intestate. The plaintiff alleges that the defendant was the owner of a vacant lot in the town of Edenton, and upon the marriage of her intestate the defendant proposed to him that, if he would build upon and improve said vacant lot, it should be his; that he would make him a fee-simple title to it; that upon this agreement her intestate entered upon said lot, and greatly improved the same, by erecting a dwelling and other out-houses thereon, which im-

provements greatly enhanced the value of said lot, to the amount of $400; that her husband and intestate lived on said lot in the dwelling-house he had built with the plaintiff, his wife, from 1892 until 1897, when he died, leaving the plaintiff and two children, the result of their marriage; that plaintiff continued to occupy said house and premises for some time after the death of her intestate, when she surrendered the possession to the defendant upon his request, and upon his promise to give her a part of the rent for the benefit of her said children, but that since the defendant has gotten possession of said property he refuses to pay her any part of the rent, and refuses to convey said land to her children; that said contract and agreement between her intestate and the defendant was never reduced to writing, her intestate having full confidence in the defendant, and believing that he would keep his said promise, and convey him the lot; that said contract and agreement being in parol only, and the defendant refusing to carry out the agreement and to convey said property, the plaintiff asks that he may be decreed to account and pay for the valuable and permanent improvements her intestate put upon said lot.

The defendant answers, and admits that the plaintiff's intestate was his son; that he went upon said lot and occupied the same with his family until his death; and that he built some small house for his use while there, but not the dwelling-house which defendant alleges he built. But he denies that there was any agreement between him and plaintiff's intestate that, if he would go upon said lot and improve it, he would convey said lot to the plaintiff's intestate, and denies that he said anything to said intestate to induce him to improve said lot, with the expectation that he would convey the same to him; that, as the intestate was his son, he simply permitted him to occupy said lot without rent, and defendant admits a

demand for title, and for an account and settlement for improvements, and that he has refused the same, but he did not formally plead the statute of frauds.

Upon the trial, the Court formulated issues as to whether there was a parol contract or agreement between the defendant and intestate that, if intestate would improve said lot, defendant would make him a title to it, and, if there was, did plaintiff's intestate, in pursuance of said agreement, enter upon said lot and place valuable permanent improvements thereon. Upon these issues the plaintiff introduced Isaac Owens and other witnesses, and asked them if they ever heard the defendant say how it was and under what circumstances the plaintiff's intestate entered upon, improved, and occupied said lot; stating that the purpose of asking these questions was to prove that there was such a parol contract between the defendant and intestate as that alleged in the complaint. The defendant objected, objection sustained, and the witness was not allowed to answer. Plaintiff thereupon submitted to a judgment of nonsuit, and appealed. This is the case, and the only question presented for our consideration is as to the competency of this evidence.

It would seem that *Sain v. Dulin,* 59 N. C., 195, and *Dunn v. Moore,* 38 N. C., 364, cited by the defendant, sustain the ruling of the Court. But the question has been before the Court a great number of times, and we must admit that the opinions do not appear to be always in harmony. A parol contract for the sale of land is not a void contract, but voidable, upon denial or a plea of the statute of frauds. *Thomas v. Kyles,* 54 N. C., 302; *Gulley v. Macy,* 84 N. C., 434. But when the alleged contract is denied, or the statute of frauds pleaded, this avoids the contract, because the party alleging it is not allowed to show by parol evidence what the contract was. The English rule seems to have been that the statute

of frauds must be pleaded, or the party would be allowed to proceed with parol evidence to establish the contract.   But our Courts have extended the rule so as to include a denial of the contract as well as by pleading the statute of frauds. *Gulley v. Macy, supra,* and many other cases.   Whether it would not have been better that we had followed the English rule is not now an open question, as the rule seems to be firmly established the other way in this State.

But the plaintiff contends that she is not claiming the right to establish—to set up—a parol contract; that she is not asking a specific performance, nor is she asking damages for the breach of a parol contract; that her contention is that, by reason of the contract or agreement between her intestate and the defendant, the intestate was induced to enter upon the defendant's land, and place permanent and valuable improvements on the same; and that this is a new cause of action, collateral to the contract, based upon a new consideration given by equity to prevent fraud.   If the plaintiff is entitled to maintain this action against the defendant, it is purely upon equitable principles.   Before the junction of the jurisdiction of law and equity in the same Court, a bargainee, in a parol contract for the sale of land where the contract was repudiated by the bargainor, could not have relief against the bargainor in a Court of Equity, if legal demands alone were involved.   If the bargainee had paid the purchase-price, or a part of it, in money or specific personal property, he had a right of action at law to recover the same back.   And a Court of Equity would not aid him, unless there was something else connected with the transaction that gave him an equity.   Then the Court of Equity, having acquired jurisdiction of the matter, would proceed to investigate and settle legal as well as equitable demands.   *Chambers v. Massey,* 42 N. C., 286.   But no such question as this can

arise now, as the same Courts have both jurisdictions, and administer both law and equity.

If the plaintiff's intestate entered upon the defendant's land under a parol contract, and placed valuable and permanent improvements thereon, and the defendant, after such improvements were made, repudiates the contract, and refuses to convey, the plaintiff has an equitable cause of action. *Ellis v. Ellis,* 16 N. C., 345; *Albea v. Griffin,* 22 N. C., 9; *Lyon v. Crissman,* Id., 268; *Pitt v. Moore,* 99 N. C., 85; *Tucker v. Markland,* 101 N. C., 422; *Chambers v. Massey,* 42 N. C., 286; *Thomas v. Kyles,* 54 N. C., 302; *Love v. Nelson,* 54 N. C., 339, and many other cases. The Court says in many of these cases that it would be against equity and good conscience to allow the bargainor to repudiate his contract, and thereby to reap the benefit of the bargainee's money and labor.

But it is contended by the defendant that, if this is so, the defendant is protected from any liability to account for the reason that he has denied the contract, and the law will not allow the plaintiff to prove it. And this is admitted to be true, so far as establishing the contract for the purpose of enforcing a specific performance, or the recovery of damages for a breach thereof. But can not the plaintiff prove there was a contract under which her intestate was induced to enter and put valuable improvements on the land? If she can not, the fraud upon which the plaintiff's action is based is protected by the simple answer of the defendant. This, it seems to us, can not be and is not the law in this State. In *Albea v. Griffin, supra,* which seems to be regarded as the leading case, it does not distinctly appear that the defendant denied the contract, and, if he did not, certainly no stress is put upon that fact by the learned Judge who wrote the opinion. The opinion in *Albea v. Griffin* was written by

Judge *Gaston* at June Term, 1838, and at June Term, 1839, he wrote the opinion in the case of *Lyon v. Crissman,* 22 N. C., 268, in which he uses this language: "If the objection be that the agreement is void, because not reduced to writing, and this objection could avail anything, it should have been set up in the pleadings. But this has not been done. The plaintiff avers one agreement, and the defendant sets up another, and the parties have left to proof which representation is the true one." *Ellis v. Ellis,* 16 N. C., 245, was an action for specific performance of a parol contract for the sale of land, and alternate relief was demanded for betterments. The answer denied the contract, and the Court held that it could not be specifically enforced, but allowed evidence, and ordered an account as to rents and profits and for betterments. In *Pitt v. Moore,* 99 N. C., 85, which was an action on a parol contract for betterments, where the defendant did not admit the contract as alleged, and set up a different contract or state of facts to those alleged by the plaintiff (and this was an action by the personal representative), and the plaintiff was allowed to prove the agreement, and the Court granted the relief prayed for and ordered an account to be taken, in the opinion of the Court the following language is used: "Whatever may have been the ancient rule, it is now well settled by many decisions, from *Baker v. Carson,* 16 N. C., 381, in which there was a divided Court, but RUFFIN, C. J., and GASTON, J., concurring, and *Albea v. Griffin,* 17 N. C., 9, by a unanimous Court, to *Hedgepeth v. Rose,* 95 N. C., 41, that where the labor or money of a person has been expended in the permanent improvement and enrichment of the property of another by parol contract or agreement, which can not be enforced because, and only because, it is not in writing, the party repudiating the contract, as he may do, will not be allowed to take and hold the prop-

erty thus improved and enriched, without compensation for
the additional value which these improvements have con-
ferred upon the property, and rests upon the broad principle
that it is against conscience that one man shall be enriched to
the injury and cost of another, induced by his own acts."
This was an action by the personal representative.  *Tucker v.
Markland,* 101 N. C., 422, is to the same effect as *Pitt v.
Moore,* where plaintiffs brought an action for possession of
land, and defendants answered, setting up a parol contract
of purchase by their ancestor, alleging permanent improve-
ments, and asking payment for the same.  The plaintiffs re-
plied, denying the contract and defendants' right to have pay
for improvements.  But the Court allowed evidence to be in-
troduced to establish the parol contract, which the jury
found to have been made by defendants' ancestor, and the
Court ordered a reference as to rents and profits and im-
provements, and this Court affirmed the judgment.  *Thomas
v. Kyles,* 54 N. C., 302, is a case where the plaintiff alleged
that his intestate made a parol contract with the defendant
for the purchase of land, entered upon and took possession
thereof, and put valuable improvements on the same.  The
defendant answered, denying the contract.  But the plaintiff
was allowed to prove the contract by parol evidence, and,
while the Court refused to compel a specific performance, the
plaintiff's claim for betterments was allowed.  Other cases
might be cited as authority for the admission of parol evi-
dence, to show that the party entered and placed valuable
improvements on land under a parol contract or promise to
convey, but we do not deem it necessary to do so.  It seems
to be settled by this Court that it may be done; and the cases
cited show that where a party is induced to go upon land,
and put valuable improvements thereon, by the owner thereof,
upon a parol promise to convey the same to the party putting

the improvements on the land, and the owner afterwards re-
fuses to convey, it is held by this Court to be a fraud upon the
party so induced, and the Court will compel him to pay for
such improvements.

It was also contended for the defendant that the right to
have pay for improvements only exists while the bargainee is
in possession, and *Albea v. Griffin* and *Pass v. Brooks,* 125
N. C., 129, were cited as authority for this position. But
neither of these cases, nor any other case that has been called
to our attention, supports this contention. In these cases and
other like cases, the bargainee being in possession, the Court
said that such bargainee should not be turned out until the
bargainor paid for the improvements. This was only a
means resorted to by the Court to enforce the bargainee's re-
covery, and not as the grounds of the plaintiff's equity, which
was made distinctly to rest upon the fraud of the bargainor;
and it would be just as fraudulent and unconscionable for the
bargainor to take profit by means of such fraud, if the bar-
gainee was out of possession, as if he was still in possession.
It is the fraud that gives the right of action, and not the
possession. But the cases of *Tucker v. Markland, Pitt v.
Moore, Thomas v. Kyles, supra,* and other cases, seem to settle
this contention against the defendant. It is true that it is
said in *Pass v. Brooks* that the contract is admitted, and, de-
fendants being in possession, the case of *Albea v. Griffin* was
followed as to the judgment; and the statement that the con-
tract was admitted is only a statement of the facts of the
case. There is nothing in the case of *Pass v. Brooks* that
conflicts with what is said in this opinion. The doctrines
announced in this case, or many of them, are held in the re-
cent case of *North v. Bunn,* 122 N. C., 766, in which case it
is held that the bargainee was entitled to an account, and
that, if anything should be found in her favor, it should be a

lien on the land. It may be that this judgment was given owing to the peculiar circumstances of that case. But from the authorities cited, and the strong equitable reasons appealing to our consciences for redress against a fraud, we are of the opinion that the evidence should have been admitted; and if it shall be found on the trial that the plaintiff's intestate was induced to go upon the lot and put valuable permanent improvements upon the same, by reason of the promise of the defendant that he would convey the lot to him, the plaintiff will be entitled to have an account to ascertain the value of the improvements, subject to the rents and profits, while the plaintiff and intestate were in possession, and, if a balance be found in her favor, the judgment shall constitute a charge on the rents and profits of said lot until it is paid, and a receiver may be appointed if it shall be deemed necessary.

Error. New trial.

DOUGLAS, J. (dissenting). I can not concur in the judgment of the Court, because it seems to me to fly in the teeth of the statute of frauds. This statute, originally St. 29 Car. II. c. 3, sec. 2, now sec. 1554 of The Code, reads as follows: "All contracts to sell or convey any lands, tenements or hereditaments, or any interest in or concerning them shall be void and of no effect, unless such contract or some memorandum or note thereof shall be put in writing and signed by the party to be charged therewith or by some other person by him thereto lawfully authorized." The avowed purpose of this statute, as originally expressed, was to prevent frauds and perjuries by doing away with the opportunities and inducements offered by certain parol contracts, those relating to sales of landed interests being perhaps the most important. It is similar in purpose to section 590 of The Code; and I

regret to say that both sections, though founded on acknowl-
edged principles of public policy and repeatedly affirmed and
reaffirmed by legislative enactment, seem doomed to ultimate
emasculation by the well-meaning, but dangerous relaxations
of the Courts, based upon the extension of equitable princi-
ples.   We have frequently seen how sections 171 and 172 of
the Code may be practically nullified by triennial payments
of insignificant amounts or alleged promises not to plead the
statute.   A recent case, forcibly illustrating the former, is
*Garrett v. Reeves,* 125 N. C., 529.   In the case at bar the
plaintiff is not in possession of the property, and this, in
my mind, distinguishes this case from all those cited by the
Court in support of its opinion.   The plaintiff says that "she
surrendered the possession to the defendant at his request
and upon his promise to give her a part of the rent for the
benefit of her said children."   There was no allegation of
force or fraud, further than a promise whose fulfillment
rested entirely in the future.   Under such circumstances,
the "preventive" remedies of a Court of Equity have no
place.   The word "prevent" is derived from the Latin word
*"praevenire"*—to come before; to precede.   This was its
original meaning in English, as given by Webster, its present
meaning being "to intercept, to hinder, to frustrate, to stop,
to thwart."   All its meanings are anticipative.   To prevent
an injury, does not mean to redress an injury.   By
the very meaning of the words, the one necessarily
comes after the injury, while the other must precede it.   Hence
the equities arising from a parol agreement for the sale of
land were originally enforced only by enjoining the vendor
from taking possession of the land.   Even down to the
present day, I am unable to find a single case in our Reports
where the vendee in parol has recovered for improvements
after his surrender of possession.   On this point, the Court
cites *Tucker v. Markland,* 101 N. C., 422; *Pitt v. Moore,* 99

N. C., 85, and *Thomas v. Kyles,* 54 N. C., 302. In the last-named case specific performance was decreed for the greater part of the land. The last clause of the opinion relating to the five acres is very short, and, while it does not specifically state that that portion of the land was in the possession of the plaintiff, there is nothing to the contrary. The natural inference is that the plainiff was in possession, as the decree simply provides that an account of the improvements shall be taken without in any way making them a lien upon the land or the rents and profits thereof. Moreover, this case is distinguished and almost overruled in *Sain v. Dulin,* 59 N. C., 195, which is clearly against the contention of the plaintiff in the case at bar, as also is *Dunn v. Moore,* 38 N. C., 364. Both these latter cases have been repeatedly cited with approval. In *Pitt v. Moore,* also a suit for specific performance, the plaintiff and defendant appear to have been partners, jointly in possession of the mill. The Court says, on page 92, 99 N. C.: "The action is substantially for the settlement of the partnership, and the plaintiff is entitled to have an account," etc. In *Tucker v. Markland,* the Court distinctly states the principle of its decision in the following words: "It would be inequitable and against conscience to allow the latter to turn him (the vendee) out of possession thereof without restoring his outlay in cash and for valuable improvements he put on the land while so in possession. * * * Shall the Court allow the vendor to keep the money of the vendee, which he thus obtained, while it helps him to get possession of the land? Surely not. The Court of Equity will not enforce the contract because the statute pleaded renders it void, but it will not help the vendor to consummate a fraud." In *Albea v. Griffin,* 22 N. C., 9, the leading case upon the subject, this Court says: "If they repudiate the contract, which they have a right to do,

they must not take the improved property from the plaintiff without compensation for the additional value which these improvements have conferred upon the property." To the same effect is *Pass v. Brooks,* 125 N. C., 129. In the very nature of things, what other remedy can be given without violating the letter and spirit of the statute? In the case at bar the Court can not say: "We will prevent the vendor from taking back his land without just compensation; we will not help him to commit a fraud." The vendor asks no help. His fraud is an accomplished fact. He is in possession of his land, and simply asks to be let alone. What then can we do? We can not decree specific performance, nor can we put the plaintiff back in possession of the land which she voluntarily surrendered.

But it is said we can render an affirmative judgment for the amount of the improvements. In what way? Not in contract, for there was no agreement that the vendor would pay for the house. Not for breach of contract, for the only contract between them was one that lies under the ban of the law. Such a contract can not even be proved, much less enforced. It is true the vendee in possession may prove a parol contract of sale as showing the nature of his possession, but not as the sole ground of affirmative relief. This seems to be clearly recognized in *North v. Bunn,* 122 N. C., 766, an action in the nature of ejectment. There the Court says: "The contract for the conveyance of the land in dispute, being in parol and denied, can not be enforced by reason of the statute of frauds. When the contract is denied, the Court can not hear proof of a void contract,"—citing *Dunn v. Moore,* 38 N. C., 364. Further on the Court, referring to compensation for improvements, says: "This relief is not founded upon the existence of any contract sought to be executed, or for the breach of which compensation or damages were asked. It is an appeal to the Court to prevent fraud."

LUTON *v.* BADHAM.

The only case I can find in our Reports where the vendee has even asked for compensation for improvements after his surrender of possession is *McCracken v. McCracken,*88 N. C., 272, and there his right was absolutely denied by a majority of this Court.    Justice RUFFIN, speaking for the Court, says: "But, neither in that case (*Albea v. Griffin*), nor in any other in which its principles have been adopted—and there are many such,—is there even a suggestion to be found that an action can be sustained in any form, or in any Court, whether at law or in equity, for damages for the non-performance of such a contract; and that is simply what this action is,— nothing more nor less.    To permit it to be done would be for the Courts to act in the very teeth of the statute, in defiance of the declared will of the legislature."    It is true in that case the vendor offered to let the vendee take his improvements, one of them being a mill-race dug in the ground.    A hole in the ground is not a very valuable piece of property when severed from the realty, and so the vendee asked the Court to give him something else instead.    The Chief Justice dissented from the opinion of the Court in an able opinion, upon the reasoning of which the plaintiff's counsel, who has clearly presented every available point in his case, frankly stated he chiefly relied.    There is much in the case at bar that appeals to our moral sensibilities, but not to our equitable jurisdiction.    We must remember that such jurisdiction attaches where there is no adequate remedy at law, but not where the contract is forbidden by law.    There is a clear distinction between the illegality of a contract and the inadequacy of a legal remedy, as much so as there is between the statement of a defective cause of action and a defective statement of a cause of action.    In one case the defect is in the substance; but in the other, merely in the accident.

That it is the policy of the law to regard the vendee's claim

for improvements as purely a defensive remedy appears from section 473 of The Code, which provides that any defendant against whom a judgment shall be rendered for land may, at any time before the execution of such judgment, present a petition to be allowed for permanent improvements put upon the land in good faith. *Boyer v. Garner,* 116 N. C., 125, 130. It would seem that the decided current of authority in other States is to the effect that claims for improvements can not be entertained after surrender of the premises, but so much depends upon local statutes that the value of such decisions is frequently doubtful, as applying to general principles of equity. 16 Am. and Eng. Enc. Law, 103-105. In many States, perhaps in a majority, such parol contracts are enforced under the principle of part performance; but as this doctrine has been distinctly repudiated in this State, we must decide the question in accordance with the tenor of our decisions and the policy of our laws.