WILLIAM L. ALLISON, TRADING AS STATESVILLE MANUFACTURING COMPANY, v. THOMAS H. STEELE AND WIFE, GRACE BATES STEELE, AND J. M. LYLES,

and

WILLIAM L. ALLISON, AN INDIVIDUAL TRADING AS THE STATESVILLE MANUFACTURING COMPANY, v. THOMAS H. STEELE AND WIFE, GRACE B. STEELE, AND J. M. LYLES.

(Filed 19 November, 1941.)

1. **Frauds, Statute of, § 1—**

The purpose of the statute of frauds is to prevent fraud upon individuals charged with participation in transactions coming within its purview, and not to render the parol contracts prescribed void as against public policy, and therefore the defense of a statute of frauds must be properly invoked by the parties seeking its protection.

2. **Frauds, Statute of, § 6: Trial § 29b—Defense of statute of frauds may not be raised by exception to charge when defendants did not object to parol evidence.**

Defendants denied the contract declared on, offered evidence that they did not enter into the contract, but did not object to plaintiff's parol evidence in support of the contract alleged. In making up the case on appeal, defendants excepted to the charge for that the court failed to charge the law relative to the statute of frauds, C. S., 564, and contended on appeal that plaintiff's evidence disclosed a contract to answer for the debt or default of another. *Held:* Defendants' exception to the charge cannot be sustained, the court having had no notice that defendants would rely upon the statute, and defendants having waived the defense of the statute by failing to properly present such defense.

**3. Husband and Wife § 4c—**

In this action seeking to hold husband and wife liable upon the husband's alleged agreement to be responsible for materials furnished a contractor for improvements made upon their land, there was no evidence that the wife consented and procured her husband to make the contract, and therefore the wife's motion to nonsuit should have been allowed.

**4. Same: Trial § 38—**

Plaintiff sought to hold husband and wife liable upon an alleged agreement to be responsible for materials furnished a contractor for improvements upon their land. There was no evidence that the wife procured her husband to make the contract but the sole issue upon the question of liability was whether the husband, with the consent and procurement of the wife, entered into the alleged agreement. *Held:* The issue presented an inseparable proposition entitling the husband to a new trial to determine the question of his sole liability.

**5. Justices of the Peace § 3—**

Where materials of a value in excess of two hundred dollars are furnished under an entire and indivisible contract, and the material furnisher institutes suit in a justice's court to recover for part of the materials furnished and also institutes suit in the Superior Court on the same cause of action, defendants' motion to dismiss the action instituted in the justice's court for want of jurisdiction should be allowed, since plaintiff may not split up his cause of action for jurisdictional purposes and try it piecemeal in both courts.

IN BOTH CASES, the defendants, Thomas H. Steele and Grace B. Steele, appealed from *Clement, J.,* at May Term, 1941, of IREDELL.

Case No. 380 was begun before a justice of the peace, and from a judgment against the defendants was appealed to the Superior Court of Iredell County. Case No. 381 was pending in Iredell County Superior Court when trial was reached, and both cases were heard together. The demands grew out of the same transaction, the evidence was the same, as were, for the most part, the objections and exceptions taken upon the trial. Those exceptions which are exclusive to the particular case will be hereafter noted where pertinent to decision.

These suits were brought to recover an amount alleged to be due to the plaintiff by the defendants upon a contract under which certain materials were furnished to defendant, J. M. Lyles, a contractor, for use in making improvements upon certain property belonging to the defendants, Steele. The claims and contentions of the parties are more fully set forth in the record in Case No. 381, and for a better understanding of all the matters involved, we consider it first.

*No. 381.* This case was begun by summons in the Superior Court, 23 October, 1940. It appeared that a materialman's lien was filed 9 May, 1940. The plaintiff complains that some time prior to 5 July, 1939, a contract was entered into between the defendants, J. M. Lyles

and Thomas H. Steele, and the plaintiff, in which Thomas H. Steele, acting for and in behalf of himself and wife, Grace B. Steele, "agreed with the plaintiff's employees that they (Steele and wife) would be responsible for any material furnished for the erection of a house" on certain property; and that in consequence of "said understanding and assurance by the defendant, Thomas H. Steele," the plaintiff furnished the required material to the amount of $2,212.12, all of which was used on the lot described, and demanded recovery of the said sum and that a lien therefor be declared upon the property.

The defendants denied the contract and averred that J. M. Lyles was a general contractor to make the improvements on the land described and furnish material at his own expense, and that they had no obligation with regard to it except to pay J. M. Lyles the money agreed to be paid under his contract with the defendants. The defendants further allege that credit was extended not to them but to J. M. Lyles upon his own proper promise to pay for the materials. It is further alleged in the answer and further defense that the defendants Steele had made no further payments to J. M. Lyles on the contract between them and Lyles after having received notice of the claim of the plaintiff against Lyles; and that there was a balance due said general contractor for his creditors, sufficient to pay about one-half of the claims for materials furnished the said Lyles, which balance the defendants "are ready and willing to pay." The defendants also alleged in their further defense that there was pending in the Superior Court of Iredell County at the institution of this suit an action by the plaintiff against the defendants upon the same alleged contract and cause of action, and asked that the action be dismissed.

Plaintiff's evidence tended to show that Jim Gray, an employee and agent of the plaintiff, had a conversation with Thomas H. Steele, prior to the furnishing of the materials pursuant to instructions from Mr. Lowrance, a manager for Allison. It was in regard to furnishing Mr. Lyles materials to erect houses on Steele's lot in Queens Court, and witness asked Mr. Steele how it was to be financed, as they did not know Mr. Lyles. In the witness' own words: "I saw Mr. Steele at his home on Davie Ave. We sat in the living room and I asked him about these jobs Mr. Lyles was going to build for him; told him we didn't know anything about Mr. Lyles and I came to find out how it was going to be financed. Mr. Steele told me that he never started a job until he got his commitment on it and his money in the bank and he stood behind that bank and the materialmen and would see that no one would lose at all, to go ahead and sell Mr. Lyles, it would be all right, and he would see that he would pay. I reported to Mr. Lowrance that Mr. Steele told me that it would be perfectly all right, that he would see that the bills were paid." The witness further stated that Lyles had told him he was

building houses for Mr. Steele and wanted some materials, but did not say he had any contract.

From time to time bills were made against Lyles and were shown to Steele and then given to Lyles for payment. The bills for materials were all left with Lyles. In August, September, and October witness presented bills to Lyles and asked him to pay them, and received the reply that he had not yet got his money from Mr. Steele. He testified that Steele had never made any payment.

Fred Lowrance stated that he went to see Mr. Steele and asked him to give a note or pay for the materials and received the reply that as soon as the attorneys would close up the loan, he would pay the bills. Hazel Taylor testified that she was the bookkeeper and made entries with regard to the jobs. The first entry on the "single house" was, "July 28, 1939, J. M. Lyles, No. 500." This is the improvement involved in No. 380, appeal from the justice of the peace.

The entry showed the first item furnished on Job No. 5246, involved in the case begun in the Superior Court and now being considered, was on 5 August, 1939, and the last on 10 November, 1939. She was permitted to say, over objection, that the amount due on this job was $2,212.12. This witness stated that the bills were never passed on to Mr. Steele, to her knowledge. She further testified that the account was carried on the books of the company as "J. M. Lyles, Thomas H. Steele Job." Thomas Steele's name was not on the ledger sheet. The book account was in the name of "J. M. Lyles, City."

The defendant, Thomas H. Steele, testified in substance that he had a contract with Lyles for the construction of two houses—No. 500, and No. 5246—as a general contract under which Lyles was to furnish all of the labor and material at the price specified for construction at his own expense. He denied that he had ever had any conversation with Mr. Gray in which he advised the latter that he would see that Mr. Lyles paid for materials—"I never made any such statement. I agreed in no way or sense to pay for materials which Lyles bought."

Witness said that he had a conversation with Mr. Lowrance in the latter part of April, 1940, which simply concerned where Mr. Lyles was, if he was coming back, and if anything had been heard of him. No demand was made on him for materials which had been furnished to Lyles, nor was he informed that the Statesville Manufacturing Company was looking to him for payment. Lowrance did ask him if he still owed Lyles anything under the contract, and defendant told him the amount which was still due Lyles, and that he was ready to settle at any time Lyles was "ready to close the case." Witness further stated that no employee of the Statesville Manufacturing Company had ever delivered a bill or statement to him for materials used by Lyles, and that no material had been delivered to him personally.

11—220

Defendants further introduced billhead of Statesville Manufacturing Company dated 1 November, 1939, showing an account stated against J. M. Lyles alone for the material sold to him for the Steele jobs. Defendants also introduced ledger sheet of Statesville Manufacturing Company for the purpose of showing that the account was carried against Lyles alone and credit extended to him. There was introduced also in behalf of defendants a letter of the plaintiff to Lyles dated 25 July, 1939, in which the plaintiff offered to furnish the material for the duplex house to be erected on defendant's property for the sum of $1,420.64, delivered to the job.

Plaintiff in rebuttal introduced summons in the action before G. I. Anderson, justice of the peace, issued 7 October, 1939, brought by Allison against these defendants and J. M. Lyles, asking for $175.00 for materials furnished on Lot No. 3 of Queen's Court.

The defendants, at the conclusion of plaintiff's evidence, and again at the conclusion of all the evidence, moved for judgment as of nonsuit and renewed their motion to dismiss the action because of the pendency of another suit upon the same cause of action. The following issues were submitted to the jury:

"1. Did Thomas H. Steele, with the consent and procurement of the codefendant, Grace B. Steele, contract and agree with the plaintiff that he would pay for the material used in Job 5246? Answer: 'Yes.'

"2. If so, in what amount are the defendants indebted to the plaintiff? Answer: '$2,212.12.' ".

To the submission of each of these issues the defendants excepted. (Exception No. 8, Record, p. 18.)

The defendants excepted to the failure of the court to comply with C. S., 564, in the following respect: "That the Court failed to instruct the jury, in substance, that if it should find that the agreement of Thomas H. Steele, if there was an agreement, with the plaintiff, did not create an original obligation, was collateral and superadded to the obligation of Lyles to pay, he remaining liable, and was not in writing, then the agreement would not be enforceable by reason of the statute of frauds, and that the first issue should be answered NO." (Exception No. 9, Record, p. 30.)

Defendants further lodge two exceptions to the failure to instruct the jury with regard to the first issue above quoted and the evidence relating to the same, that is, (a) "what facts it must find from the evidence, explaining the law thereon, in order to find that the materials furnished by the plaintiff were contracted for with the 'consent and procurement' of the defendant, Grace B. Steele," and (b) "that the court failed to instruct the jury in substance, that under the evidence in this case, as a matter of law, it could not find as a fact that the materials furnished

by the plaintiff were contracted for with the 'consent and procurement of the defendant, Grace B. Steele.' "

Defendants protected the exceptions taken during the course of the trial by formal exceptions to the refusal to set aside the verdict for errors of law, and to the signing of the judgment.

*No. 380.* This case began by summons before a justice of the peace and was for the recovery of $175.00 with interest alleged to be due by reason of a contract between plaintiff and defendants, Thomas H. Steele and Grace B. Steele and J. M. Lyles, by virtue of which it is claimed materials were furnished for improvements on property owned by the Steeles, being done by Lyles, upon the promise of defendants Steele to see that payment was made. As the case was heard conjointly with the case later brought in the Superior Court, the evidence as to the contract was identical, and exceptions taken on the trial are, for the most part, the same.

*Scott & Collier for plaintiff, appellee.*
*Raymer & Raymer for defendants Thomas H. Steele and wife, Grace B. Steele, appellants.*

SEAWELL, J. *No. 381.* In this case, as above noted, plaintiff brought suit in the Superior Court of Iredell County to recover of the defendants $2,212.12, which he claimed to be due him for material furnished on one of the jobs included in the improvements made upon defendants' property. Under the alleged contract between plaintiff and defendants, it will be noted that defendants denied that they had made any such contract, and set up that Lyles was an independent contractor who had agreed to make the improvements at a set price, including the furnishing of all material, and that the debt, if any, was his.

The evidence in regard to the contract is fully set out above, and will not be repeated here.

Upon the evidence, the defendants conceive themselves entitled to recognition by the court and consideration by the jury of the statute of frauds as it relates to a promise to answer for the debt, default or miscarriage of another, which they contend the contract to be, according to plaintiff's evidence, if indeed there was any contract at all. In this respect they urge as prejudicial error that the judge did not distinguish the evidence applying to this phase of the case and apply the law thereto.

No doubt the evidence we find in the record would require serious consideration from that point of view, both in the trial court and here, and would have demanded an application of the law to the facts in appropriate instructions to the jury if the question had been properly raised.

If the force and effect of the statute were to vitiate all contracts required by it to be in writing, but which are found to be in parol, and to render them unenforceable, *virtute legis,* simply, as is sometimes the case with contracts made void because in contravention of public policy, the law itself, without entreaty by the interested party, might stay the hand of the court, where the contract, either by virtue of its lack of ambiguity or of a determination to that effect by a jury, falls within the statute. But the purpose of the statute is to prevent fraud upon individuals charged with participation in transactions coming within its purview, and not upon the public at large. The question, therefore, must be raised and the statute invoked by the party who seeks to defend under it, and not *suo sponte* by the court. If, then, it is the office of the person charged with a promise to raise the question of its invalidity under the statute, the court, if it is to charge the jury concerning the statute, must have timely notice during the trial of his intention to rely upon it. *Henry v. Hilliard,* 155 N. C., 372, 71 S. E., 439; 25 R. C. L., 692, n. 9. Otherwise his conduct may have the effect of waiving the statute, that being his privilege. *Henry v. Hilliard, supra; McGowen v. West,* 7 Mo., 569, 38 Am. Dec., 468; *Moore Lumber Corp. v. Walker,* 110 Va., 775, 67 S. E., 374; see, also, *Draper v. Wilson,* 143 Wis., 510, 128 N. W., 66.

There was nothing said about the statute here until defendants came to note their exceptions to the charge, which, under our liberal practice, is permitted to be done long after the trial in making up the case on appeal. It is then, however, too late to apprise the court of an intention to rely upon the statute of frauds, and, indeed, an attempt to do so in this manner is ineffectual. *Cozart v. Land Co.,* 113 N. C., 294, 18 S. E., 337; *Ogburn v. Booker,* 197 N. C., 687, 150 S. E., 330; *Render v. Lillard,* 61 Okla., 206, 160 Pac., 705; *Moore Lumber Corp. v. Walker, supra.*

In *Henry v. Hilliard, supra,* the court summarized the methods by which one charged with such a promise may invoke the statute. "The party to be charged may simply deny the contract alleged, or deny it and set up a different contract, and avail himself of the statute, without pleading it, by objecting to the evidence; or he may admit the contract and plead the statute; and in either case the contract cannot be enforced." This has been approved in *Balentine v. Gill,* 218 N. C., 496, 500, 11 S. E. (2d), 456, 458. If the list is not, indeed, comprehensive in its application to all possible situations, it seems clear, at least, that the procedure adopted by defendants is insufficient for the purpose. They did not plead the statute, and, while denying the contract, they did not follow this up by objection to the parol evidence offered to prove it.

Where the defendant relies upon a denial of the contract and objection to the evidence by which it is sought to be proved, he merely brings the plaintiff to an *impasse,* because by the rules of evidence he is not permitted to show by parol a contract which the law requires to be in writing, *Holler v. Richards,* 102 N. C., 545, 9 S. E., 460; *Browning v. Berry,* 107 N. C., 231, 235, 12 S. E., 195, 196; *Jordan v. Furnace Co.,* 126 N. C., 143, 35 S. E., 247; *Luton v. Badham,* 127 N. C., 96, 37 S. E., 143—unless, indeed, that contract has been written and lost or destroyed, or is otherwise rendered unavailable, *Gwynn v. Selzer,* 48 N. C., 382; *Chair Co. v. Crawford,* 193 N. C., 531, 137 S. E., 577. The rule that a denial of the contract will raise the question of the statute of frauds only where the complaint shows the contract to be in writing, while very general, does not seem to obtain here. *Jordan v. Furnace Co., supra.*

But there are errors brought up by defendants' exceptions which cannot be overlooked. We find no evidence that would bind the *feme* defendant by the promise or contract upon which the plaintiff sues. The defendants not only objected to the submission of the issue as to the liability of Mrs. Steele, but further strengthened their position by exceptions to omissions in the charge of any proper application of the law to the evidence respecting her liability if there should be any evidence to support it.

As to Grace B. Steele, the motion for judgment as of nonsuit should have been allowed. As to Thomas H. Steele, the objectionable issue presents an inseparable proposition, and defendants' objection to its submission is good. The defendant is entitled to an issue which will determine his liability without the involvement of any other person as procurer where there is no evidence to support it. *Coltrane v. Laughlin,* 157 N. C., 282, 72 S. E., 961; *Clinard v. Kernersville,* 217 N. C., 686, 688, 9 S. E. (2d), 381, 382. For this error, he is entitled to a new trial.

*No. 380.* There are exceptions applicable to this case alone, and one which goes to its root—based upon refusal of the motion to dismiss it for want of jurisdiction in the justice's court to entertain it. This refers to the inability of plaintiff to split up his cause of action for materials furnished under one indivisible contract so that, at his convenience, the items might be divided and suits prosecuted and judgments obtained on them separately. Whatever may be the rights of a defendant who has suffered such an action to go to judgment before a justice of the peace, without appeal, and to what extent a judgment so obtained may affect a suit subsequently brought on the same contract as *res adjudicata, Jarrett v. Self,* 90 N. C., 478, we need not discuss upon this appeal. Defendants furnished sufficient record evidence to show the bringing of another action in the Superior Court for materials furnished on the same contract, and the fact is admitted in the brief. In fact, both

cases were tried together. The plaintiff has no more right to split up his cause of action and try one part in the justice's court and one part in the Superior Court than he has to try it piecemeal in the magistrate's court. The motion to dismiss the action brought before the justice of the peace for lack of jurisdiction should have been allowed. *Boyle v. Robbins,* 71 N. C., 130; *Jarrett v. Self, supra; McPhail v. Johnson,* 109 N. C., 571, 13 S. E., 799. It is unnecessary to consider other exceptions in the record.

In No. 381,

As to Grace B. Steele, Reversed.

As to Thomas H. Steele, New Trial.

In No. 380, on defendants' motion to dismiss for want of jurisdiction, Reversed.