Gene DAVIS, t/d/b/a Tar Heel Oil Company, Inc., Plaintiff-Appellee,

v.

CROWN CENTRAL PETROLEUM CORPORATION, Defendant-Appellant.

U–FILL 'ER–UP, INC., Plaintiff-Appellee,

v.

CROWN CENTRAL PETROLEUM CORPORATION, Defendant-Appellant.

Nos. 73–1652, 73–1833.

United States Court of Appeals, Fourth Circuit.

Argued July 16, 1973.

Decided Aug. 21, 1973.

A. Ward McKeithen, Charlotte, N. C. (Fleming, Robinson & Bradshaw, Charlotte, N. C., on brief), for appellant in No. 73–1652.

J. Nat Hamrick, Rutherfordton, N. C. (Hamrick & Hamrick, Rutherfordton, N. C., A. Myles Haynes and Haynes, Baucom & Chandler, Charlotte, N. C., on brief), for appellee in No. 73–1652.

Bynum M. Hunter, Greensboro, N. C. (Richard W. Ellis, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on brief), for appellant in No. 73–1833.

William D. Caffrey, Greensboro, N. C. (Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., on brief), Lawrence Egerton, Jr., Greensboro, N. C. (A. Myles Haynes, Haynes, Baucom & Chandler, Charlotte, N. C., on brief), for appellee, in No. 73–1833.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge.

These two cases, combined on hearing because of their similarity of issues, are unfortunate by-products of the current oil shortage. Both the plaintiffs and the defendant are victims of the shortage in one form or another. They may properly be termed independents in their own particular type of operation. The plaintiffs, both citizens of North Carolina, on the one hand, are small independent oil dealers with their main operations in North Carolina. The defendant, on the other hand, is a refiner, dependent almost entirely on producers for its supply of crude oil. It has for some years been selling its product to the plaintiffs. In anticipation of the oil shortage, which all parties in the industry apparently foresaw, discussions were had among the parties as to future supplies. It is contended by the plaintiffs that the defendant agreed to supply them with certain fixed quantities of gasoline. As the energy crisis deep-

ened, the suppliers of the defendant reduced drastically its supply of crude oil. It accordingly proceeded to allocate on a lower percentage its deliveries to its contract customers and to notify customers such as the plaintiffs, whom it denominated non-contract customers, that it would make no further sales to them. These actions followed that notification. The plaintiff Davis filed his action originally in the Western District of North Carolina, seeking injunctive relief against what he claimed was a breach of contract involving irreparable injury and damages for violation of the Sherman Act. Jurisdiction was based on diversity of citizenship and federal question. The other action was first instituted in the State Court and removed to the District Court for the Middle District of North Carolina. The plaintiff in this action sought similar relief to that demanded in *Davis* and federal jurisdiction was predicated on similar grounds.[1] Preliminary injunctive relief was sought in both cases by the plaintiffs and were granted in both instances by the District Court having jurisdiction of the actions. It is from these grants of injunctive relief that the defendant has appealed in each case. Since there is similarity both of facts and issues in both cases, we ordered the appeals argued together and we shall dispose of both together. We reverse in both cases.

In granting temporary injunctive relief, the District Court in each instance made specific Findings of Fact. The defendant contends that these Findings show on their face that the temporary injunctive relief was improvidently granted. Specifically, it attacks the Finding made by the District Court in each case that the plaintiffs were likely to prevail eventually on the merits. Such a finding is necessary for the granting of preliminary injunctive relief. Long v. Robinson (4th Cir. 1970)

---

1. The State Court clearly lacked jurisdiction of the action under the Sherman Act but, whether jurisdiction existed after and as result of removal to Federal Court, see Freeman v. Bee Machine Co. (1943) 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509.

432 F.2d 977. This basic contention presents the issue on appeal.

In support of its conclusion that the plaintiffs were likely to prevail, the District Court in each case found that there was an oral agreement between the plaintiff and the defendant whereby the defendant was to supply the plaintiffs with their gasoline requirements. In the *U-Fill 'Er-Up Case*, the District Court found that, since the plaintiff had expended considerable sums in developing gasoline outlets, termination of supply by the defendant was "not reasonable." It, also, based its conclusion in part at least on considerations of public policy, stating that "as a matter of equity, suppliers should ration their product to historical customers in times of national shortage on a pro rata basis and that this principle has been recognized by the Congress of the United States in passing certain legislation that calls for a pro rata distribution of petroleum products to historical customers based upon the product purchased during a base period defined as the fourth quarter of 1971 and the first three quarters of 1972" and "that the public has a definite interest in preserving a competitive retail gasoline market and the elimination of the Plaintiff and other independent oil jobbers would be against the public interest." The District Court in that case ordered the defendant to supply the plaintiff U-Fill 'Er-Up with gasoline "on the basis of 2.12% of the total gasoline sold by the Defendant while this Order is in effect."

In the *Davis Case*, the District Court found there was an agreement between the plaintiff and the defendant "for the purchase of goods vastly exceeding $500.00", which was "not written nor evidenced by any writing" and which, though obligating defendant to supply the plaintiff as much as 1,200,000 gallons per month, did not obligate the plaintiff "to purchase that quantity nor any set quantity of gasoline." Although it recognized that the defendant was suffering hardship, too, on account of the oil crisis, the District Court found that, "[T]he balance of hardship favors the relief sought by the plaintiff" and "[T]hat the public interest will not be harmed by the issuance of an injunction." It accordingly ordered the defendant to "continue to supply plaintiff with at least 300,000 gallons of gasoline products per month * * * pending further orders of this Court * * *."

The defendant denied in both cases the existence of any valid agreement. In support of this position, it asserts the alleged agreements are lacking in mutuality and definiteness of duration. Moreover, it argues that if there were any agreement, it was void as violative of the controlling Statute of Frauds. It is conceded by all parties that the North Carolina law is controlling on these several contentions.

We find it necessary to consider only the contention based on the Statute of Frauds. The Findings of Fact in each case make it clear that any agreement between the plaintiffs and the defendant was within the North Carolina Statute of Frauds. That statute, unlike its counterpart in other jurisdictions where its scope is merely remedial, "affects the substance as well as the remedy." Jamerson v. Logan (1948) 228 N.C. 540, 46 S.E.2d 561, 564, 15 A. L.R.2d 1325. On the basis of the present Findings of Fact in each case, the statute would be a complete bar to a ruling that there was a valid contract or agreement between the plaintiffs, on the one hand, and the defendant, on the other. It is true, as the plaintiffs have argued, that in exceptional cases, courts of equity will find an estoppel against the enforcement of the statute but such an estoppel can arise in North Carolina only "upon grounds of fraud" on the part of him who relies on the statute. McKinley v. Hinnant (1955) 242 N.C. 245, 87 S.E.2d 568, 574. The District Court in neither case made a finding of "fraud" on the part of the defendant and, absent such finding, there can be no estoppel. Nor, on the facts in the

record before us, would it appear that any such finding would have been in order. In United Merchants & Mfrs. v. South Carolina El. & G. Co. (D.C.S.C. 1953) 113 F.Supp. 257, 263, aff'd 4 Cir., 208 F.2d 685, it was stated:

> " 'A mere failure or refusal to perform an oral contract, within the statute, is not such fraud, within the meaning of this rule, as will take the case out of the operation of the statute, and this is ordinarily true even though the other party has changed his position to his injury.' "

After all, as the District Court in one of the cases observed, the plight of the defendant was not substantially different from that of the plaintiffs. It was experiencing hardships which forced it to take action it obviously did not relish.

The claim of the plaintiffs is appealing and our sympathies are with them. As the District Courts indicated, it is equitable in periods of scarcity of basic materials for the Government to inaugurate a program of mandatory allocations of the materials. This, however, is a power to be exercised by the legislative branch of Government. The power of the Court extends only to the enforcement of valid contracts and does not comprehend the power to make mandatory allocations of scarce products on the basis of any consideration of the public interest. Public reports indicate that Congress is cognizant of the problem presented by these actions and is giving active consideration to the establishment of a program of mandatory allocations that would apply from the oil producer down to the oil retailer. It is earnestly hoped that Congress will take the necessary steps to establish such controls. For that control, however, the parties must look to the Congress and not to the Courts.

■ The District Courts were in clear error in finding on the record before them that there was the reasonable likelihood that the plaintiffs would prevail on the merits. For that reason, the granting of injunctive relief during the pendency of the actions was improper in both cases and the injunctions are hereby vacated.

Reversed.

BUTZNER, Circuit Judge, dissents.