**ANCHORAGE–HYNNING & CO., A District of Columbia Limited Partnership, et al., Appellants**

v.

**Thomas G. MORINGIELLO.**

**No. 80–1846.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1981.

Decided Jan. 4, 1983.

Harry L. Ryan, Jr., Arlington, Va., with whom Robert W. Hickey, Arlington, Va., was on the brief, for appellants.

Gerald Heller, Washington, D.C., with whom Robert F. Condon, Washington, D.C., was on the brief, for appellee.

Before ROBINSON, Chief Judge, WIL-KEY, Circuit Judge, and THORNBERRY,* Senior Circuit Judge.

Opinion for the Court filed PER CU-RIAM.

Dissenting Opinion filed by Senior Circuit Judge THORNBERRY.

PER CURIAM:

This diversity-jurisdiction case[1] arises from a claim of breach of an oral agreement to execute a contract for sale of a building and for lease of the land upon which it is erected. Appellants, the purported vendors, challenge the District Court's summary judgment in appellee's favor. The sole issue is whether the agreement is excepted from operation of the

---

* Of the United States Court of Appeals for the Fifth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(a) (1976).

1. We are not fully informed as to the factual predicate for this assumed ground of federal-court jurisdiction. Appellants' complaint alleged merely that Anchorage-Hynning & Company and Anchorage Office Building Company, two of the plaintiff-appellants, are limited partnerships organized under the laws of the District of Columbia with offices therein; that Clifford J. Hynning, the remaining plaintiff-appellant, is the managing general partner of each of the partnerships, and is a resident of Virginia; and that Thomas G. Moringiello, the sole defendant-appellee, is a citizen and resident of New York. Complaint, ¶ 1(a)–(c), *Anchorage-Hynning & Co. v. Moringiello,* Civ. No. 79–1388 (D.D.C. June 25, 1980), Joint Appendix (J. App.) 3–4. The complaint gives no indication of the identity or citizenship of any other general partner, nor of any of the limited partners.

Taken alone, these facts do not establish the jurisdiction invoked. For diversity purposes, the citizenship of a limited partnership does not depend upon the state of its organization, the location of its principal place of business, or any of its other features as an entity, see, *e.g., Great S. Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900); instead, jurisdiction stands or falls on the citizenship of its individual partners. See *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 183 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (citizenship of general partners determined citizenship of limited partnership for diversity-jurisdiction purposes; citizenship of limited partners relevant only when limited partner is proper party to proceeding under state law); but see *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254, 1257–1259 (3d Cir.1977) (identity of citizenship between a number of limited partners of plaintiff partnership and defendants precluded exercise of diversity jurisdiction).

Appellees, however, have never contested federal-court jurisdiction. Much more importantly, the District Court seemingly concluded that there was diversity of citizenship. See *Anchorage-Hynning & Co. v. Moringiello, supra,* at 1, J. App. 118 (memorandum opinion). We ourselves have no knowledge of any fact that would defeat diversity jurisdiction in this case. Presuming, then, that the District Court's conclusion in this regard was based upon jurisdictional facts known to it, we proceed to consider the case on the merits. It will be for that court, upon remand of the case, to amplify its jurisdictional finding with pertinent facts to the end that jurisdiction will appear more affirmatively on the face of the record.

District of Columbia's statute of frauds by virtue of promissory estoppel, part performance or waiver. We conclude that doctrine developed in the area of waiver controls, and that appellee lost the protection of the statute through admissions in the District Court. We further hold, on the basis of those admissions, that the parties entered into an enforceable oral agreement to execute a written sale-lease contract, and that appellee breached that agreement. Accordingly, we reverse the District Court's judgment and remand for further proceedings.

## I

Appellants are owners of a tract of land and a building situated thereon in the District of Columbia.[2] In July, 1977, appellants received an inquiry from appellee's agent concerning a possible sale-lease of that property.[3] The parties met several times to discuss such a transaction,[4] and on August 15 reached a general consensus on terms, including price of the building[5] and duration of a lease of land.[6] During the weeks following, appellee's counsel asked appellants to supply copies of a first deed of trust on the property, existing leases, and all outstanding service and maintenance agreements,[7] and to order a current title examination by Columbia Real Estate Title Company.[8] Appellants complied[9] and, pursuant to subsequent request by appellee's counsel, later substituted Chicago Title Insurance Company as the title searcher.[10]

The parties met again on September 21, at which time appellee's counsel presented to appellants drafts of a proposed contract of sale-lease and an indenture of lease.[11] Responsively to requirements set forth in these documents,[12] appellants secured amendments to the existing deed of trust.[13] Appellants were subsequently informed by appellee's counsel that the contract of sale-lease and the lease indenture were completed and satisfactory to appellee.[14]

By prearrangement, appellants met with appellee's counsel on November 3 for the purpose of executing the contract of sale-lease and other relevant documents.[15] Appellee was scheduled to be present at that meeting but he did not appear.[16] When telephoned in New York City by his counsel, appellee said that he was unable to be in Washington that day, but that he would send a check for a deposit of $25,000 as evidence of his good faith.[17] The check, however, never arrived,[18] subsequent nego-

2. *Id.*

3. *Id.*

4. *Id.* at 2, J. App. 119.

5. The building was to be sold for $750,000. *Id.*

6. *Id.* The land was to be leased for a period of 99 years. *Id.* It was also agreed at the August 15 meeting that all necessary legal documents would be prepared by appellee's counsel. *Id.*

7. *Id.* Transmittal of these documents to the purchaser-lessee was required by the proposed contract of sale ultimately drafted by appellee's counsel. See Contract of Sale, ¶ 10(C), attachment to Requests of Plaintiff for Admissions, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 33.

8. *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, at 2, J. App. 119 (memorandum opinion).

9. *Id.*

10. *Id.* As of this date, appellants had also increased the hazard insurance on the building

to an amount reflective of the contemplated sale price. *Id.*

11. *Id.*

12. *Id.;* see Contract of Sale, ¶ 12(D), attachment to Requests of Plaintiffs for Admissions, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 25–26.

13. *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, at 2, J. App. 119 (memorandum opinion). Evidence of these completed amendments was presented to appellee on September 27. *Id.*

14. *Id.*

15. *Id.* at 2–3, J. App. 119–120.

16. *Id.*

17. *Id.*

18. *Id.* During the course of these negotiations, appellee also attempted to lease space within the building to restaurateurs. *Id.* Appellee

tiations between the parties proved unsuccessful, and during January of 1978 settlement efforts were abandoned.[19] Consequently, the written sale-lease contract and the lease indenture were never executed.

Appellant filed suit in the District Court, alleging the facts we have recited and seeking damages for "Failure to Execute a Subsequent and Agreed Upon Documentary Agreement."[20] In his answer, appellee raised the statute of frauds [21] as a defense.[22] Appellee admitted that he had met with appellants for purposes of negotiating a sale of the building for an agreed-upon price, subject to such additional terms as decided upon.[23] Appellee also conceded that he had subsequently met with appellants on the occasions enumerated,[24] that he had requested the various documents from appellants,[25] and that the language in the final contract draft was satisfactory to him.[26] Appellee, however, denied having indicated on November 3 that he would send a check as a good-faith deposit,[27] or that there was ever an agreement between the parties to execute the instruments proposed.[28]

Subsequently, appellants filed a request for admissions [29] pursuant to Civil Procedure Rule 36 [30] seeking concessions of the following facts:

That the contract of sale obliged [appellee] to deposit the sum of $25,000 by certified check as a condition of said contract, and that [appellee] on a number of occasions speaking through his attorney, promised to obtain and deliver the designated check to [appellants] and to meet [appellants] in the city of Washington, District of Columbia, to execute the contract of sale as drafted by [appellee's] attorney. . . .[31]

\* \* \* \* \* \*

The [appellants and the appellee] . . . had agreed upon the conditions for a ninety-nine year lease on the [land] known as the "Anchorage". . . .[32]

\* \* \* \* \* \*

contended that success in that effort was a condition precedent to any sale. *Id.* Appellants admitted knowledge of appellee's plans for a restaurant, but denied that those plans rose to the level of a condition. *Id.* They further alleged that appellee demanded that they maintain the existing tenant of the building on a lease providing for a thirty-day notice to quit so that the space would be available for the hoped-for restaurant operations. *Id.*

19. *Id.*

20. Complaint, caption, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 3. Appellants sought $250,000 in damages as compensation for lost ground and building rentals, costs incurred in securing the requested amendments to the deed of trust, and monetary losses suffered in a sale ultimately made to a third party at a lesser price. *Id.* ¶ 16, J. App. 8.

21. D.C.Code § 28–3502 (1981), providing in pertinent part:
An action may not be brought . . . upon a contract or sale of real estate, of any interest in or concerning it, . . . unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, . . . signed by the party to be charged therewith or a person authorized by him.

22. *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, at 1, J. App. 118 (memorandum opinion).

23. Answer and Counterclaim of Defendant, First Defense, ¶ 4, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 9–10.

24. *Id.* ¶¶ 6–7, J. App. 10.

25. *Id.* ¶ 6, J. App. 10.

26. *Id.* ¶ 8, J. App. 10.

27. *Id.* ¶ 10, J. App. 10.

28. *Id.* ¶ 4, J. App. 9–10. Appellee's answer was coupled with a counterclaim for tortious interference with business relations, alleging that appellants had wrongfully disrupted his negotiations with the expected proprietor of the proposed restaurant. *Id.* Counterclaim, ¶¶ 4, 5, J. App. 12.

29. Requests by Plaintiffs for Admissions, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, 1–5, J. App. 19–23.

30. Fed.R.Civ.P. 36.

31. Requests by Plaintiffs for Admissions, ¶ 2, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 20.

32. *Id.* ¶ 3, J. App. 20.

On November 3 ... [appellee] in a telephone conversation, authorized [his] counsel to advise [appellant] that [he] was forwarding a check for $25,000 forthwith for delivery to [appellant] to evidence [appellee's] ongoing good faith.[33]

Appellee failed to respond to this request.

Following discovery, appellant moved for summary judgment, arguing that the case was excepted from the statute of frauds by reason of promissory estoppel and part performance,[34] and appellee filed a cross-motion for summary judgment.[35] The District Court granted appellee's motion,[36] holding that the undisputed facts failed to establish a promise on which appellants could reasonably have relied to their detriment,[37] and that, because of the absence of such a promise, the doctrine of part performance was not applicable.[38] It is the summary judgment in appellee's favor that appellants challenge.[39]

In this court, appellants contend that the District Court erred in its application of the law of promissory estoppel and part performance.[40] Additionally, relying on a recent decision of the District of Columbia Court of Appeals,[41] appellants also insist

that appellee waived the protection of the statute of frauds through various admissions during discovery activity.[42] We hold that such a waiver did in fact occur, and thus that the instant action is not barred by the statute.[43] We further hold that the agreement admitted was complete and enforceable under District of Columbia law.[44] Accordingly, we reverse the District Court's order and remand the case for further proceedings.

## II

At the outset, we note that federal-court jurisdiction was predicated on diversity of party-citizenship,[45] and that consequently we should ascertain and apply District of Columbia law.[46] Because the Rules of Decision Act[47] is not applicable to the District, we have held that this result is not mandated by the Supreme Court's seminal *Erie* decision,[48] but that the *Erie* doctrine is to be analogously applied by federal courts exercising diversity jurisdiction in the District.[49] That is necessary, we have explained, to further *Erie's* goals of discouraging forum shopping and promoting uniformity in local law,[50] and to assure the deference properly

---

**33.** *Id.* ¶ 4, J. App. 21.

**34.** Motion by Plaintiffs for Summary Judgment, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 60.

**35.** Motion by Defendant for Summary Judgment, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 76.

**36.** *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, at 1, J. App. 118 (memorandum opinion).

**37.** *Id.* at 5, J. App. 122.

**38.** *Id.* at 5–6, J. App. 122–123.

**39.** Notice of Appeal, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 125.

**40.** Brief for Appellants at 18.

**41.** *Hackney v. Morelite Constr.,* 418 A.2d 1062 (D.C.App.1980).

**42.** Brief for Appellants at 14–16.

**43.** See notes 70–78 *infra* and accompanying text.

**44.** See notes 79–100 *infra* and accompanying text.

**45.** See note 1 *supra.*

**46.** *Lee v. Flintkote Co.,* 193 U.S.App.D.C. 121, 124 n. 14, 593 F.2d 1275, 1278 n. 14 (1979). See also cases cited *infra* note 49.

**47.** 28 U.S.C. § 1652 (1976).

**48.** *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**49.** See *Steorts v. American Airlines, Inc.,* 207 U.S.App.D.C. 369, 371–372, 647 F.2d 194, 196–197 (1981); *Tuxedo Contractors, Inc. v. Swindell-Dressler Co.,* 198 U.S.App.D.C. 426, 428 n. 14, 613 F.2d 1159, 1161 n. 14 (1979); *Lee v. Flintkote Co., supra* note 46, 193 U.S.App.D.C. at 124 n. 14, 593 F.2d at 1278 n. 14.

**50.** *Steorts v. American Airlines, Inc., supra* note 49, 207 U.S.App.D.C. at 371 n. 24, 647 F.2d at 196 n. 24; *Tuxedo Contractors, Inc. v. Swindell-Dressler Co., supra* note 49, 198 U.S. App.D.C. at 428 n. 14, 613 F.2d at 1161 n. 14;

due the District of Columbia Court of Appeals as the highest court of the District.[51]

Relying, then, as they must, on District of Columbia law, appellants contend that the instant case is taken outside the statute of frauds by either part performance or promissory estoppel, and that the District Court erred in holding to the contrary.[52] Appellants also contend that appellee waived the benefit of the statute by admitting the existence of an oral agreement to execute a written contract to purchase the building and lease the land.[53] This latter argument is predicated upon the District of Columbia Court of Appeals' decision in *Hackney v. Morelite Construction*.[54] Because that decision was rendered subsequently to the judgment under review, the waiver theory was not advanced in the District Court and we must address it here in the first instance.[55]

Under the traditional rule, a defendant was allowed to admit the making and existence of an oral contract and nonetheless to plead the statute of frauds as a bar to enforcement.[56] In practice, this rule often led to parties' use of the statute, designedly a shield against fraud,[57] as an instrument of blatant fraud. In recognition of this fact, some courts have adopted a waiver exception, whereby a defendant is precluded from invoking the statute defensively once he has admitted the making of the contract, albeit orally.[58]

Following this trend, the District of Columbia Court of Appeals held in *Hackney* that a defendant waives his right to assert the statute of frauds by stipulating facts sufficient to establish the existence of an oral agreement.[59] In so ruling, the court voiced its agreement with decisions of the Maryland and Delaware courts [60] declaring that in-court admissions may constitute a waiver of the statute.[61] Quoting from one

---

*Lee v. Flintkote Co., supra* note 46, 193 U.S. App.D.C. at 124 n. 14, 593 F.2d at 1278 n. 14.

**51.** *Steorts v. American Airlines, Inc., supra* note 49, 207 U.S.App.D.C. at 371 n. 24, 647 F.2d at 196 n. 24; *Tuxedo Contractors, Inc. v. Swindell-Dressler Co., supra* note 49, 198 U.S. App.D.C. at 428 n. 14, 613 F.2d at 1161 n. 14; *Lee v. Flintkote Co., supra* note 46, 193 U.S. App.D.C. at 124–125 n. 14, 593 F.2d at 1278 n. 14.

**52.** Brief for Appellants at 18.

**53.** *Id.* at 14–16.

**54.** *Supra* note 41.

**55.** Because we find the waiver argument dispositive of this appeal, we do not reach the tendered issues of part performance or promissory estoppel.

**56.** See, *e.g., State v. Bland,* 353 Mo. 639, 183 S.W.2d 878, 886 (1944); *Carney v. McGinnis,* 68 N.M. 68, 358 P.2d 694 (1961); *Allison v. Steele,* 220 N.C. 318, 17 S.E.2d 339, 343 (1941); *Weant v. McCanless,* 235 N.C. 384, 70 S.E.2d 196, 198 (1952); 22 A.L.R. 723. See generally Stevens, *Ethics and the Statute of Frauds,* 37 Cornell L.Rev. 355 (1952). During the early history of the English statute of frauds, however, a defendant was denied the privilege of pleading the statute as a defense when (1) the absence of the required signed memorandum resulted from his fraud, (2) the equitable doctrine of part performance was applicable, or (3) he had admitted the contract. *Id.* at 378; *Wolf*

*v. Crosby,* 377 A.2d 22, 26 (Del.Ch.1977). Development of a rule allowing a defendant to utilize the statute even after acknowledging the contract initially stemmed from a belief that "it was better to remove the temptation [to give perjured testimony] than to hold the defendant to an agreement conscientiously admitted to have been entered into." Stevens, *supra,* at 371.

**57.** See Stevens, *supra* note 56, at 378 (statute intended to prevent fraud). As Dean Stevens explains, the doctrines of part performance and promissory estoppel also further this statutory purpose. *Id.* at 378–379.

**58.** See, *e.g., Altex Ready-Mixed Concrete Corp. v. Employers Commercial Union Ins. Co.,* 308 So.2d 889, 891 (La.App.1975), *cert. denied,* 312 So.2d 872 (La.1975) (citing La.Rev.Stat. §§ 1890, 1902, 3035 *et seq.*); *Friedman v. Clark,* 252 Md. 26, 248 A.2d 867, 871 (1969); *Trossbach v. Trossbach,* 185 Md. 47, 42 A.2d 905, 908 (1945); *Zlotziver v. Zlotziver,* 355 Pa. Super. 299, 49 A.2d 779, 781 (1946); *Wolf v. Crosby, supra* note 56, 377 A.2d at 27.

**59.** *Hackney v. Morelite Constr., supra* note 41, 418 A.2d at 1067.

**60.** *Wolf v. Crosby, supra* note 56; *Trossbach v. Trossbach, supra* note 58; *Friedman v. Clark, supra* note 58.

**61.** *Hackney v. Morelite Constr., supra* note 41, 418 A.2d at 1066–1067.

such decision, the *Hackney* court expressed its concern that

> a defendant can admit an honest obligation and yet defeat its enforcement by pleading that the agreement was only oral and that there is no written evidence of the obligation as required by the Statute of Frauds.[62]

This result, the court declared, would be inconsistent with the statute's purpose.[63] Thus, finding "no meaningful difference between an admission in court and the trial stipulations,"[64] the *Hackney* court concluded that a defendant's admission through stipulations may bar him from asserting the statute of frauds.[65]

As enunciated and applied by the District of Columbia Court of Appeals, the waiver exception is strikingly consistent with the statute's fundamental objective. Though often deemed a substantive rule of contract law,[66] the statute of frauds was originally designed to serve primarily an evidentiary function.[67] It protected against perjured testimony by requiring that certain contracts be proven by a writing;[68] as the *Hackney* court observed, "the purpose of the Statute of Frauds is to protect a party, not from temptation to commit perjury but from perjured evidence against him."[69]

When the contract alleged is admitted by the party charged, there is no danger of perjured evidence or other fraud on that score, and the cause of justice is disserved by allowing that party to interpose the statute as a defense.

■ This rationale applies with equal force to the case at bar. Like the *Hackney* court, we perceive no "meaningful difference"[70] between admissions made in trial stipulations and those made during in-court testimony. Nor can we imagine a difference when, as here, the admission is extracted by the discovery process. We hold, then, that the District of Columbia courts would hold that a defendant waives the protection of the statute of frauds, and hence is barred from asserting it defensively, by admitting during the course of discovery either the making of the contract or facts sufficient to establish its existence.

### III

Having concluded that in this fashion a waiver of the statute of frauds would follow under District of Columbia law, we turn to determine whether the record establishes that appellee did admit an oral agree-

---

**62.** *Id.* (quoting *Wolf v. Crosby, supra* note 56, at 25 (quoting *Stevens, supra* note 56, at 367)).

**63.** *Hackney v. Morelite Constr., supra* note 41, 418 A.2d at 1067.

**64.** *Id.*

**65.** *Id.* The *Hackney* court also relied by analogy upon a section of the District of Columbia Commercial Code, D.C.Code § 28:2–201(3)(b) (1981), which provides, with one exception, that a sale contract required to be evidenced by a writing is nonetheless enforceable "if the party against whom enforcement is sought admits in his pleadings, testimony, or otherwise in court that a contract for sale was made."

**66.** See, *e.g., Davis v. Crown Cent. Petroleum Corp.*, 483 F.2d 1014, 1016 (4th Cir.1973); *Terrace Court Realty, Inc. v. Fifth Ave. Realty Corp.*, 27 Misc.2d 110, 209 N.Y.S.2d 22, 26 (Sup.Ct.1960); *Reedy v. Ebsen*, 60 S.D. 1, 242 N.W. 592, 593 (1932); 2 A. Corbin, Contracts § 279 (1950) (statute affects legal relations of contracting parties and should be called rule of substantive law).

**67.** *Hackney v. Morelite Constr., supra* note 41, 418 A.2d at 1066 (statute intended to guard against perjury) (quoting 3 S. Williston, Contracts § 448 (1960)); J. Calamari & J. Perillo, Contracts § 19–1 (1977) (writing requirement of statute imposed to obviate perjury); 2 A. Corbin, Contracts § 275 (1950) (purpose of statute is to prevent imposition of obligations by perjury); accord, *Conness v. Conness*, 94 Ill.App.2d 281, 236 N.E.2d 753, 754 (1968) (statute is rule of evidence); *Huston v. Gelane Co.*, 254 Iowa 752, 119 N.W.2d 188, 190 (1963) (same); *Gravel v. Rohe*, 185 Md. 121, 43 A.2d 201, 203 (1945) (same); *Janchar v. Cerkvenik*, 35 Ohio App. 519, 172 N.E. 634 (1928) (same).

**68.** *E.g., Sealock v. Hackley*, 186 Md. 49, 45 A.2d 744, 746 (1946); *Zlotziver v. Zlotziver, supra* note 58, 49 A.2d at 781. See generally *Stevens, supra* note 56.

**69.** *Hackney v. Morelite Constr., supra* note 41, 418 A.2d at 1066 (quoting *Trossbach v. Trossbach, supra* note 58, 42 A.2d at 908).

**70.** See text *supra* at note 64.

ment to execute a written contract for the sale and lease of the subject property and, if so, whether that agreement is enforceable under local law.

As we noted earlier, appellant served a request under Civil Procedure Rule 36 [71] for appellee's admission that he frequently "promised . . . to meet [appellants] in the city of Washington, District of Columbia to execute the contract of sale as drafted by [appellee's] attorney," [72] and that "the [appellants and the appellee] . . . had agreed upon the conditions for a ninety-nine year lease on the [land] known as the Anchorage." [73] Appellee, we repeat, totally ignored this call. By force of Rule 36, matter subjected to such a request is admitted for purposes of the litigation pending unless answered or objected to,[74] and is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." [75]

In failing to respond to appellants' requests, appellee thus admitted that he "promised . . . to meet [appellants] . . . to execute the contract of sale," [76] that the parties had "agreed upon the conditions for" the lease of the land,[77] and that appellee promised to fortify the transaction with a monetary deposit.[78] The record discloses no later step to obtain leave of court to withdraw or amend these admissions. In consequence of Rule 36, then, the facts ad-

mitted were conclusively established, and plainly they suffice as a waiver of the statute of frauds. We accordingly hold that appellee cannot summon the statute as a defense.

This does not end our inquiry, however, for the question remains whether the oral agreement, thus admitted, rises to the level of an enforceable contract. District of Columbia law permits parties to enter into an arrangement obligating them to prepare and execute a subsequent written contract,[79] but to achieve enforceability it is "necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the [final] document. . . ." [80] Thus, "[i]f the document or contract that the parties agree to make is to contain any material term that is not already agreed upon," [81] the oral promises cannot serve as a foundation for judicial relief.[82]

It is clear that the "material terms" of a contract for the sale of real estate include a sufficient description of the property to be sold, the sale price of that property, and the identities of the buyer and seller.[83] We think it equally clear that a lease must minimally contain a description of the premises, the term of the tenancy, the rent to be paid, and the identity of

71. Fed.R.Civ.P. 36(a).

72. See text *supra* at note 31. There were also requests for admissions "[t]hat the contract of sale obliged" appellee to make a $25,000 good-faith deposit, and that appellee repeatedly promised that he would. See text *supra* at notes 31, 33.

73. See text *supra* at note 32.

74. Fed.R.Civ.P. 36(a), providing:
The matter is admitted unless, within thirty days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection. . . .

75. Fed.R.Civ.P. 36(b).

76. See text *supra* at note 31. Inspection of the contract discloses that it specifies not only undertakings to sell and purchase the building, but also to lease and rent the land. See Con-

tract for Sale, attachment to Requests of Plaintiffs for Admissions, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, *passim,* J. App. 24–39.

77. See text *supra* at note 32.

78. See text *supra* at notes 31, 32.

79. See *D.C. Area Community Council, Inc. v. Jackson,* 385 A.2d 185, 187 (D.C.App.1978).

80. *Id.* (quoting 1 A. Corbin, Contracts § 29 (1963)).

81. *Id.* (quoting 1 A. Corbin, Contracts § 29 (1963)).

82. *Id.*

83. *Ochs v. Weil,* 79 U.S.App.D.C. 84, 86, 142 F.2d 758, 760 (1944).

the parties.[84] Examining the oral agreement admitted by appellee, we find that it contained all necessary terms of the proposed final instruments, and thus is enforceable under local law.

 The contract of sale-lease referred to in the request for admissions [85] and appended thereto [86] sets forth a description of the property,[87] the sale price of the building,[88] and identifies appellants as the sellers.[89] The contract also recites the purchaser's undertaking to lease the described land on the terms specified in the separate lease indenture.[90] The contract does not, however, name the buyer, a space for that identification having been left blank.[91] The lease indenture, also referred to in the admissions request [92] and attached to it,[93] states the term of the lease,[94] the annual rent in dollars for the first five years,[95] and the rent-computation methodology to be followed during subsequent years.[96] That instrument, however, does not name either a lessor or a lessee.

Although neither the contract nor the lease indenture named appellee as the buyer-lessee, and although the lease indenture additionally omitted the names of appellants as the lessors, the identity of the parties having these roles is readily supplied by the undisputed factual surroundings. There were ongoing discussions and negotiations between the parties over a six-month period,[97] culminating in preparation of the documents through which the transaction would be consummated.[98] Those documents were prepared by appellee's attorney, presented to and accepted by appellants,[99] and admittedly were satisfactory to appellee.[100] Moreover, the admissions requested by appellants numerously identified appellants as the sellers-lessors and appellee as the purchaser-lessee,[101] and these facts were "conclusively established" by appellee's default.[102] There thus can be no doubt whatsoever as to the parties or the responsibilities they respectively were to discharge, or as to the completeness of their understanding in terms of material features. The oral agreement to execute a written sale-lease contract and a complementing written lease therefore contained all of the legally essential terms that were to be incorporated in the final instruments, and is enforceable under the law of the District of Columbia.

## IV

We briefly summarize our conclusions. Under local law, the statute of frauds may

---

84. See, *e.g., Custis v. Valley Nat'l Bank,* 92 Ariz. 202, 375 P.2d 558, 561 (1962); *Enlow v. Irwin,* 80 Cal.App. 98, 251 P. 658, 659 (1926); *Simons v. New Britain Trust Co.,* 80 Conn. 263, 67 A. 883, 884 (1907).

85. Requests of Plaintiffs for Admissions, ¶¶ 1, 2, 3, 4, 8, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 20, 21, 22.

86. Contract for Sale, attachment to Requests of Plaintiffs for Admissions, *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 24.

87. *Id.* ¶ 1, J. App. 24.

88. *Id.* ¶ 2, J. App. 26.

89. *Id.* 1st para. (unnumbered), J. App. 24.

90. *Id.* ¶ 3, J. App. 29.

91. *Id.* 1st para. (unnumbered), J. App. 24.

92. *Id.* ¶ 3, J. App. 20.

93. Indenture of Lease, attachment to Requests of Plaintiffs for Admissions, *Anchorage-Hyn-*

*ning & Co. v. Moringiello, supra* note 1, J. App. 41.

94. *Id.* art. I, § 1.2, J. App. 41.

95. *Id.* art. I, §§ 1.3(C), (D), J. App. 42.

96. *Id.* art. I, §§ 1.3(E), (F), J. App. 42.

97. *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, at 1–3, J. App. 118–120 (memorandum opinion).

98. *Id.* at 2, J. App. 119.

99. *Id.*

100. See Requests of Plaintiffs for Admissions, ¶¶ 1(a), (c), (d), *Anchorage-Hynning & Co. v. Moringiello, supra* note 1, J. App. 20.

101. See *id.* ¶¶ 1–4, 7–8, J. App. 20–23.

102. See notes 71–75 *supra* and accompanying text.

be waived through admissions derived from discovery activity. Appellee, through his failure to respond to appellants' request for admission of crucial facts, conceded the existence of an oral agreement to execute a written sale-lease contract and a lease indenture, and thereby waived the benefit of the statute. The agreement thus acknowledged encompassed the parties' consensus on the essential terms those instruments were to include, and accordingly is enforceable under local law. The judgment appealed from is accordingly reversed, and—because appellants have sought damages and appellee has presented a separate claim of tortious interference with his business relations—the case is remanded to the District Court for further proceedings.

*Reversed and remanded.*

THORNBERRY, Senior Circuit Judge, dissenting:

I respectfully dissent from the opinion of the majority. First, the Court chooses to address an issue raised for the first time on appeal. This runs counter to the traditional rule that "an appellate court does not give consideration to issues not raised below . . . . This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). *See Brown v. Collins,* 402 F.2d 209, 213 (D.C.Cir.1968). This rule, of course, is not inflexible, and where the interest of substantial justice is at stake, a court of appeals will consider issues raised for the first time on appeal. No such injustice exists or has been demonstrated here. While it is true that the central case relied upon by the majority, *Hackney v. Morelite Construction,* 418 A.2d 1062 (D.C.App.1980), was decided subsequent to the judgment below, the holding of that case certainly is not novel. *See, e.g.,* Restatement (Second) of Contracts, § 133 comment d (1981); 2

Corbin on Contracts § 519 (1950); Uniform Commercial Code § 2–201(3)(b). Appellant *could* have raised at trial the waiver-in-pleading theory relied upon by the majority.

On the other hand, the appellee in this case, who was not given an opportunity to argue this point, cannot but be surprised by the majority's holding.

The second point which compels this dissent concerns the merits of the majority's holding. The majority holds that a "technical admission" by a party can operate to satisfy the written "memorandum or note" requirement. This novel holding goes much further than the holding in *Hackney.* The Restatement (Second) of Contracts states plainly that "a failure to deny an allegation, *though given the procedural effect of an admission,* is not the equivalent of a signed writing for the purposes of the Statute of Frauds," Restatement, *supra,* at § 133 comment d (emphasis added). Although we have here a failure to respond to a request for admissions, the principle stated in the Restatement applies in an identical manner to the present case. The failure to respond to the request for admissions simply does not amount to a signed admission which is the equivalent of a memorandum. *Cf.* Corbin on Contracts, *supra,* § 519; 37 C.J.S. *Frauds, Statute of* § 176 at 656 (1943) ("A deposition stating the contract *and voluntarily made* by the party to be charged is a sufficient memorandum") (emphasis added).

Principles developed under the Uniform Commercial Code § 2–201(3)(b) can be used by analogy. Thus, we have a hornbook rule stating that "[o]f course, merely procedural admissions do not qualify" as in-court admissions of the existence of a contract, J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 2–5 at 66 (2d ed. 1980). *See* U.S.C. § 2–201 comment 7.

For the above-mentioned reasons, I would affirm the judgment of the district court.